IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

In re BAYOU GROUP, et al, Debtors

---

DIANA G. ADAMS,
ACTING UNITED STATES TRUSTEE,
Appellant,
v.

JEFF MARWIL, RECEIVER, and
OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
Appellees.

---

On Appeal from the United States Bankruptcy Court

for the Southern District of New York, White Plains Division

---

## BRIEF FOR APPELLANT UNITED STATES TRUSTEE

---

Of Counsel:

Roberta A. DeAngelis
Acting General Counsel

Matthew Sutko
Walter W. Theus, Jr.
United States Department of Justice
Executive Office for United States Trustees
20 Massachusetts Avenue, NW
Washington, D.C. 20530
(202) 307-1399

Lisa L. Lambert
Office of United States Trustee
33 Whitehall St., 21st Floor
New York, NY 10004
(212) 510-0500
Lisa.L.Lambert@usdoj.gov

*ATTORNEYS FOR APPELLANT
DIANA G. ADAMS,
ACTING U.S. TRUSTEE
FOR REGION 2*

# Table of Contents

Table of Authorities--------------------------------------------------------------------------------- ii

Statement Regarding Oral Argument ------------------------------------------------------------vi

Statement of Jurisdiction------------------------------------------------------------------------- 1

    A.  The bankruptcy court had subject matter jurisdiction and the power to resolve the
          motion to appoint a chapter 11 trustee. -----------------------------------------------------1

    B.  The United States Trustee had standing to bring the motion to appoint the trustee. --------2

    C.  This Court has appellate jurisdiction because the order denying appointment of a
          chapter 11 trustee is a final order -----------------------------------------------------------2

Issue Presented: Given that the Bankruptcy Code required the pre-bankruptcy receiver to
turn over all estate property to these debtors' dishonest managers, should the bankruptcy
court have granted the United States Trustee's motion for the appointment of an impartial
trustee to administer the bankruptcy estate for the benefit of all creditors? --------------------------3

Standard of Review --------------------------------------------------------------------------------3

Statement of the Case------------------------------------------------------------------------------4

Summary of the Argument-------------------------------------------------------------------------9

Argument--------------------------------------------------------------------------------------- 10

    A.  The bankruptcy court erred when it held that the Bayou Receiver could act as
          management for the debtor-in-possession. ----------------------------------------------- 10

    B.  The Bankruptcy Code formalizes trustee obligations to protect creditors, but these
          requirements are not imposed on Bayou Receiver under the Receivership Order--------- 15

    C.  The bankruptcy court had the power to order the appointment of a bankruptcy
          trustee, and the bankruptcy court erred when it held that it was bound to violate
          the Bankruptcy Code due to the Receivership Order. ------------------------------------ 17

Conclusion --------------------------------------------------------------------------------------- 22

# Table of Authorities

## CASES

*C.F.T.C. v. Weintraub*, 471 U.S. 343; 105 S.Ct. 1986 (1985) ------------------------------------------- 21

*Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co. (In re Cajun Elec. Power Coop., Inc.)*, 69 F.3d 746 (5th Cir. 1995) -------------------------------------------------------------------- 3

*Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S. Ct. 1493 (1995) ---------------------------- 1, 13, 19

*Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239 (4th Cir. 1987)--------- 3

*Dicola v. American Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. (In re Prudential Lines)*, 59 F.3d 327 (2d Cir. 1995). ------------------------------------------------------------ 2

*Erti v. Paine, Webber, Jackson & Curtis, LLP (In re Baldwin-United Corp.)*, 765 F. 2d 343 (2d Cir. 1985)----------------------------------------------------------------------------------------- 19, 20

*Gilchrist v. General Elec. Capital Corp.*, 262 F.3d 295 (4th Cir. 2001)------------------------------ 20

*In re 400 Madison Ave. Ltd. Partnership*, 213 B.R. 888 (Bankr. S.D.N.Y. 1997).------------ 11, 17

*In re Adelphia Communications Corp.*, 342 B.R. 122 (S.D.N.Y. 2006) ------------------------------ 3

*In re Centennial Textiles, Inc.*, 209 B.R. 31 (Bankr. S.D.N.Y. 1997). ------------------------------ 12

*In re N.S. Dalsimer & Co.*, 56 F.2d 644 (S.D.N.Y. 1932) ------------------------------------------- 12

*In re Plantation Inn Partners*, 142 B.R. 561(Bankr. S.D. Ga. 1992)-------------------------------- 11

*In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820 (1st Cir. 1990) -------------------------------- 3

*In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1998) ------------------------------------------- 3, 4

*Jamaica Shipping Co., Ltd. v. Orient Shipping Rotterdam (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92 (2d Cir. 2006) -------------------------------------------------------------------- 18

*Marshall v. Marshall*, 126 S. Ct. 1735 (2006) ------------------------------------------------------- 1

*Ngan Gung Rest., Inc. v. Official Committee of Unsecured Creditors (In re Ngan Gung Rest., Inc.)*, 195 B.R. 593 (S.D.N.Y. 1996) ------------------------------------------------------ 18

*Sherwood Partners, Inc. v. Lycos, Inc. (In re Sherwood Partners, Inc.)*, 394 F.3d 1198 (9th Cir.), *cert. denied*, 126 S. Ct. 1198 (2005) ------------------------------------------------ 20

*Silverman v. Tracar (In re American Preferred Prescription, Inc.)*, 255 F.3d 87 (2d Cir. 2001) ------------------------------------------------------------------------------------ 3

*State Gov't Creditors' Comm. v. McCay (In re Johns-Manville Corp.)*, 920 F.2d 121 (2d Cir.1990) --------------------------------------------------------------------------------- 2

*Union Bank v. Wolas,* 502 U.S. 151, 112 S. Ct. 527 (1991) ------------------------------- 13

*United States Lines, Inc. v. American Steamship Owners Mut. Protection Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631 (2d Cir. 2005)---------------------------- 18, 19

*United States v. United Mine Workers*, 330 U.S. 258, 67 S. Ct. 677 (1947) ------------------ 17

*United States Fid. & Guar. Co. v. Bray*, 225 U.S. 205, 32 S.Ct. 620 (1912)------------------- 20

*Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562 (5th Cir. 1995) ---------------------------- 1

*Weil v. Neary*, 278 U.S. 160, 49 S. Ct. 144 (1929)------------------------------------------- 12,13

## STATUTES

11 U.S.C. § 101(11)(A),----------------------------------------------------------------------7, 10

11 U.S.C. § 101(14)---------------------------------------------------------------------------7, 16

11 U.S.C. § 105(b) --------------------------------------------------------------- 9, 12, 15, 18, 21

11 U.S.C. § 307-------------------------------------------------------------------------------- 2

11 U.S.C. § 322(a) ---------------------------------------------------------------------------- 16

11 U.S.C. § 326(a), --------------------------------------------------------------------------- 16

11 U.S.C. § 330(a)(1)(A) --------------------------------------------------------------------- 16

11 U.S.C. § 331------------------------------------------------------------------------------- 16

11 U.S.C. § 345------------------------------------------------------------------------------- 16

11 U.S.C. § 541------------------------------------------------------------------------------- 6

11 U.S.C. § 543.----------------------------------------------7, 9, 10, 11, 13, 14, 15, 18, 21

11 U.S.C. § 543(a) ---------------------------------------------------------------------------- 11

11 U.S.C. § 543(b) ------------------------------------------------------------------------ 11

11 U.S.C. § 701 --------------------------------------------------------------------------- 12

11 U.S.C. § 702 --------------------------------------------------------------------------- 12

11 U.S.C. § 702(a)(2) --------------------------------------------------------------------- 12

11 U.S.C. § 702(b) ------------------------------------------------------------------------ 12

11 U.S.C. § 1104 -------------------------------------------------------------------------- 18

11 U.S.C. § 1104(a)--------------------------------------------------------------- 2, 14, 21

11 U.S.C. § 1104(b)(1) ---------------------------------------------------------------- 12, 16

11 U.S.C. § 1104(d)--------------------------------------------------------------------- 7, 12

11 U.S.C. § 1106 -------------------------------------------------------------------------- 11

11 U.S.C. § 1106(a)(3) -------------------------------------------------------------------- 16

11 U.S.C. § 1106(a)(4) -------------------------------------------------------------------- 16

11 U.S.C. § 1106 (a)(5) ------------------------------------------------------------------- 16

11 U.S.C. § 1107 -------------------------------------------------------------------- 11, 14, 16

11 U.S.C. § 1121(b)------------------------------------------------------------------------ 16

11 U.S.C. § 1121(c)(1) -------------------------------------------------------------------- 16

28 U.S.C. § 157(a) ------------------------------------------------------------------ 1, 17, 18

28 U.S.C. § 157 (b)(3)------------------------------------------------------------- 1, 17,18

28 U.S.C. § 157 (c) ----------------------------------------------------------------- 1, 18

28 U.S.C. §158(a)(1) -------------------------------------------------------------------- 2

28 U.S.C. § 581(a)(2)------------------------------------------------------------------- 2

28 U.S.C. § 586----------------------------------------------------------------------------- 2

28 U.S.C. § 754------------------------------------------------------------------------- 5, 14

28 U.S.C. § 959----------------------------------------------------------------------------------5, 14

28 U.S.C. § 1334---------------------------------------------------------------------------------1, 18

OTHER AUTHORITIES

H.R. Rep. No 595, 95th Cong., 1st Sess. 317 (1977), *as reprinted in* 1978 U.S.C.C.A.N.
    5787, 5815.------------------------------------------------------------------------------------12

H.R. Rep. No. 95-595, at 109 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6049,
    6071 ------------------------------------------------------------------------------------------- 2

H.R.Rep. No. 764, 99th Cong., 2d Sess. 18 (1986), *as reprinted in* 1986 U.S.C.C.A.N.
    5227, 5230 ----------------------------------------------------------------------------------- 11

Standing Order of Referral of Cases to Bankruptcy Judges of the United States District
    Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). ------- 1

RULES

Fed. R. Bankr. P. 2003(d)-----------------------------------------------------------------------12

Fed. R. Bankr. P. 8013.------------------------------------------------------------------------- 3

Fed. R. Bankr. P. 9019.-------------------------------------------------------------------------16

Fed. R. Civ. P. 66 ----------------------------------------------------------------------------5, 14

TREATISES

6 *Collier on Bankruptcy* ¶ 702 (Lawrence P. King, et al. eds., 15th ed. rev. 2006) ----------------- 12

CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8 ------------------------------------------------------------------------- 1

U.S. Const. art. VI, §8, cl. 2 ------------------------------------------------------------------21

## Statement Regarding Oral Argument

Diana G. Adams, the Acting United States Trustee for Region 2, requests oral argument. The issue on appeal impacts the integrity of the bankruptcy system, and oral argument would be of material assistance to the Court.

## Statement of Jurisdiction

**A.    The bankruptcy court had subject matter jurisdiction and the power to resolve the motion to appoint a chapter 11 trustee.**

The Article III federal district courts have "original and exclusive" subject matter jurisdiction over bankruptcy cases. 28 U.S.C. § 1334; *see* U.S. Const. Art. I, § 8; *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995); 115 S. Ct. 1493, 1498 (1995) (explaining that "[t]he jurisdiction of the bankruptcy courts . . . is grounded in and limited by statute"). The Article I bankruptcy courts acquire the power to resolve bankruptcy issues such as those in the Bayou cases through the standing order of reference from the district court. 28 U.S.C. § 157(a); Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).

Bankruptcy jurisdiction is broader than bankruptcy power. Bankruptcy courts lack the power to resolve some bankruptcy issues that fall within the jurisdictional grant, so an Article III federal district court must resolve those issues. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 570 (5th Cir. 1995) (distinguishing between bankruptcy jurisdiction and power). "A bankruptcy court may exercise plenary power only over 'core proceedings.'" *Marshall v. Marshall*, 126 S. Ct. 1735, 1743 (2006) (construing 28 U.S.C. § 157 (b)-(c)). Here, the bankruptcy court held that it lacked the power to enter an order appointing a trustee. Tr. 23:23-24:3, Brief Appendix B; Order Denying United States Trustee's Motion to Appoint a Trustee, Brief Appendix C. As detailed below, however, bankruptcy trustee issues are within the bankruptcy court's plenary, core powers.

**B.    The United States Trustee had standing to bring the motion to appoint the trustee.**

Congress assigned the United States Trustee broad oversight responsibilities over

bankruptcy cases. 28 U.S.C. § 586 (defining United States Trustee's responsibilities). The

United States Trustee for Region 2 is a senior official of the Department of Justice appointed by

the Attorney General. 28 U.S.C. § 581(a)(2). She acts as the "watchdog" of the bankruptcy

system and may be "compared . . . to a prosecutor" for cases that arise under Title 11 of the

Bankruptcy Code. H.R. Rep. No. 95-595, at 109 (1977), *as reprinted in* 1978 U.S.C.C.A.N.

5963, 6049 (using "watchdog" analogy); 6071 (using "prosecutor" analogy). Within this district,

the United States Trustee "supervise[s] the administration of cases and trustees in cases under

chapter 7, 11, 12, 13, or 15 of title 11." 28 U.S.C. §§ 581(a)(2) and 586(a)(3)(A). Section 1104,

the statute governing chapter 11 trustee appointments, specifies that the United States Trustee

has standing to seek a trustee. 11 U.S.C. § 1104(a); *see also* 11 U.S.C. § 307 (broadly defining

United States Trustee's ability to raise issues).

**C.    This Court has appellate jurisdiction because the order denying appointment of a chapter 11 trustee is a final order.**

This Court has appellate jurisdiction over "final judgments, orders, and decrees" of

bankruptcy judges. 28 U.S.C. §158(a)(1). The appellate courts have adopted a "flexible

standard of finality" for bankruptcy cases. *Dicola v. American Steamship Owners Mut. Prot. and*

*Indem. Ass'n, Inc. (In re Prudential Lines)*, 59 F.3d 327, 331 (2d Cir. 1995). A bankruptcy case

serves as an umbrella for distinct sub-issues, and rulings on the sub-issues often immediately

impact creditors and the outcome of a bankruptcy case. *State Gov't Creditors' Comm. v. McCay*

*(In re Johns-Manville Corp.)*, 920 F.2d 121, 126 (2d Cir.1990)(citations omitted). Orders

granting or denying appointment of a trustee have such impact, so these orders are final. *Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 241 (4th Cir. 1987); *In re Adelphia Communications Corp.*, 342 B.R. 122, 125 & n. 1, 128-29 (S.D.N.Y. 2006) (citations omitted); *see also Silverman v. Tracar (In re American Preferred Prescription, Inc.)*, 255 F.3d 87, 92 (2d Cir. 2001) (dicta) (citing *Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co. (In re Cajun Elec. Power Coop., Inc.)*, 69 F.3d 746, 747-48 (5th Cir. 1995); *In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 826-27 (1st Cir. 1990)).

## Issue Presented

Upon a bankruptcy filing, the debtor's property vests in a bankruptcy estate that serves as a trust for the benefit of creditors. In a chapter 11 reorganization case, either the debtor's management or a trustee serves as the fiduciary for this trust. Section 543 of the Bankruptcy Code requires pre-bankruptcy receivers to turn over estate property to the appropriate bankruptcy fiduciary. Given that the Bankruptcy Code required the pre-bankruptcy receiver to turn over all estate property to these debtors' dishonest managers, should the bankruptcy court have granted the United States Trustee's motion for the appointment of an impartial trustee to administer the bankruptcy estate for the benefit of all creditors?

## Standard of Review

This Court reviews the bankruptcy court's findings of fact for clear error. Fed. R. Bankr. P. 8013. In many contexts the appointment of a trustee involves factual interpretation and

Brief of Appellant United States Trustee – Page 3

therefore appellate review is subject to the abuse of discretion standard. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222, 1225 (3d Cir. 1998)

Here no party disputes the material facts. Marwil's Memorandum of Law in Response to the Motion of the United States Trustee for the Appointment of a Chapter 11 Trustee, D.E. 35; p. 1, Preliminary Statement. By ruling from the bench without opening the evidence, the bankruptcy court acknowledged that the Bayou Motion to Appoint a Trustee did not involve factual interpretation. *Cf. In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1998) (discussing standards of review in context of motion to appoint a trustee). Here, appellate review is analogous to reviewing a summary judgment decision. The parties dispute the ultimate fact, which is the legal result of the undisputed facts. *Sharon Steel,* 871 F.2d at 1222, 1225. This Court reviews this question of law under a de novo standard of review. *Sharon Steel*, 871 F.2d at 1222.

## Statement of the Case

Promoters marketed the Bayou Group and related legal entities (collectively "Bayou") as hedge funds – private pooled investment funds. But Bayou was ultimately exposed as a totally fraudulent enterprise. Bayou's managers falsely reported financial data and misappropriated assets. Federal agencies have filed forfeiture actions against Bayou's physical assets. The two key managers pled guilty to federal criminal charges, and they await sentencing. Israel and Marino Pleas; D.E. 41, Ex. B, Parts 1 and 2.[1] The parties uniformly agree that the prior management must not control Bayou.

---

[1] The appellate record is organized by reference to the bankruptcy court's docket entries. The bankruptcy

After prior management's fraud was discovered, Bayou ceased all operations. Bayou's tangible assets were forfeited, so Bayou's only remaining assets were litigation claims. No one was pursuing these litigation claims. Some of Bayou's creditors styling themselves the "Unofficial On-Shore Creditors' Committee"[2] filed a securities lawsuit in the United States District Court for the Southern District of New York and asked the District Court to appoint a federal equity receiver to pursue the claims. Order Consolidating 06CIV2379 with MDL 1775 and Scheduling Conference; D.E. 41, Exhibit F, p. 3. When the District Court received the request, the District Court required additional notice to creditors and noted, "what the Unofficial Committee seeks is very much akin to what occurs in bankruptcy . . . . [A] trustee is appointed . . . ." Scheduling Order, D.E. 41, Exhibit F, p. 3. "I asked why the Unofficial Committee had not chosen to proceed in bankruptcy . . . . I confess that I did not understand the answer." Scheduling Order, D.E. 41, Exhibit F, p. 4.

The District Court ultimately appointed Jeff Marwil, the Unofficial Committee's candidate, as a non-bankruptcy federal equity receiver. The District Court's Order defined Marwil as the "Receiver" and created a Receivership Estate, which also was defined as the Bayou Entities. Order Granting the Unofficial On-Shore Creditors' Committee's Motion to Appoint a Receiver (the "Receivership Order"), Brief Appendix A, para. 1, p. 2; Appendix A to D.E. 35. The Bayou Receiver was expressly appointed pursuant to 28 U.S.C. § 754, 28 U.S.C. § 959, Federal Rule of Civil Procedure 66, and the District Court's inherent powers. Receivership Order, Brief Appendix A, para. 1.

---

court ruled without opening an evidentiary record, indicating the Court considered judicial admissions and took judicial notice of transcripts and orders attached to pleadings.

[2]  The Unofficial Committee consisted of voting and non-voting members. In accordance with 11 U.S.C.

The Receivership Order itemized the Receiver's duties. "[T]he Receiver is specifically authorized, empowered and directed to perform the following duties and responsibilities . . . . *Corporate Governance*: [The Receiver] . . . [shall] succeed to be the sole and exclusive managing member and representative of each of the Bayou Entities." Receivership Order, ¶ 7(e), Brief Appendix A. He "manage[s] and direct[s] the business and financial affairs of the Bayou Entities." Receivership Order, ¶ 7(e), Brief Appendix A. In addition to giving the Bayou Receiver the power to file bankruptcy, the Receivership Order specified that the Bayou Receiver would "be deemed a debtor-in-possession for . . . the Bayou Entities . . . and prosecute such adversary proceedings and other matters *as may be permitted under the [Bankruptcy] Code and/or applicable law.*" Receivership Order, ¶ 7(e) (emphasis added), Brief Appendix A.

On May 30, 2006, the Bayou Receiver filed voluntary bankruptcy petitions for each of the Bayou entities. The United States Trustee agreed that the Bayou Receiver had the power to file the bankruptcy cases because the filing was a pre-bankruptcy act authorized by the Receivership Order and not prohibited by the Bankruptcy Code. The United States Trustee contended – and contends – that the federal law terminated the Receiver's authority to manage the estates of the Bayou entities when the bankruptcy cases were filed.

The United States Trustee filed a Motion to Appoint a Chapter 11 Trustee. D.E. 29. The United States Trustee sought the appointment of a neutral bankruptcy trustee based on the following legal position:

- The bankruptcy filing created a bankruptcy estate of property held in trust for the creditors. 11 U.S.C. § 541.

§ 1102(a), the United States Trustee appointed an Official Creditors' Committee after the bankruptcy filing.

**Brief of Appellant United States Trustee – Page 6**

- This bankruptcy estate unwound the Receivership Estate that the Bayou Receiver controlled. *See* Receivership Order, ¶ 1, p. 2, Brief Appendix A (defining Receivership Estate).

- In bankruptcy, the Bayou Receiver became a custodian by operation of law, 11 U.S.C. § 101(11)(A), and the Bayou Receiver was required to turn over the property to the corporate management or the bankruptcy trustee. 11 U.S.C. § 543(a).

- Because Bayou's former corporate management had pled guilty to federal crimes, everyone concurred that the property should not be turned over to the former management.

The United States Trustee argued below that the appointment of a bankruptcy trustee was necessary to fill the vacuum of lawful management under the Bankruptcy Code. The Bayou Receiver would turn over the property to the chapter 11 trustee, to be administered in accordance with the requirements of the Bankruptcy Code. 11 U.S.C. § 543. The United States Trustee acknowledged, "[t]here's actually no per se rule against a receiver becoming a trustee . . . . [W]e certainly would listen to the parties and assuming Mr. Marwil meets the disinterested standardness [sic] that will all be taken into consideration so it's not as if we're trying to necessarily displace Mr. Marwil. We're trying to get it into the proper procedural format." Tr. 13:4-17, Brief Appendix B, D.E. 84; see 11 U.S.C. § 1104(d) (requiring United States Trustee to confer with "parties in interest" when appointing a trustee); 11 U.S.C. § 101(14) (defining "disinterested person").

The Garfinkels, investors being sued by the Receiver, joined in the United States Trustee's Motion to Appoint a Chapter 11 Trustee. The Garfinkels focused on the Receiver's standing issue as it impacted them. They contended the Bayou Receiver lacked standing to pursue avoidance actions under the Bankruptcy Code. Garfinkels' Objection, ¶ 2; D.E. 41.

The Bayou Receiver and the Official Committee of Creditors opposed the appointment of a bankruptcy trustee, generally contending that the Bayou Receiver was Bayou's management under the Receivership Order and that the Receivership Order controlled the bankruptcy case. Receiver's Memorandum in Opposition, D.E. 35; Committee's Objection, D.E. 39; Receiver's Supplemental Response, D.E. 44.

Agreeing with the Bayou Receiver and the Official Committee, the bankruptcy court denied the United States Trustee's Motion to Appoint a Chapter 11 Trustee. The bankruptcy court held that it had subject matter jurisdiction but not the power to resolve the dispute because a District Court had appointed the pre-bankruptcy Bayou Receiver. Tr.16:4-10; 23:23-24:14, Brief Appendix B. The United States Trustee asked the bankruptcy court to defer ruling so she could seek withdrawal of the reference. Tr. 17:6-9. Instead of deferring the issue or dismissing the Motion to Appoint the Trustee, the bankruptcy court ruled. Rather than viewing the issue as one of the Bankruptcy Code supplanting the Receivership Order, the bankruptcy court perceived the Motion to Appoint a Chapter 11 Trustee as a collateral attack. "[T]his is not the Court to reverse Judge McMahon's order. . . . I haven't the power to do it, and I won't do it." Tr. 10:20-22, Brief Appendix B.

Alternatively, the bankruptcy court held the Bayou Receiver was "not a custodian any more than had the District Court approved the appointment of a new board of directors, a new

president, somebody with a title other than receiver. I haven't studied her order that carefully . . . . I don't know how many times the word "receiver" appears. . . . But the substance of the order is that Mr. Marwil is not simply a custodian. He is given the management of these entities." Tr. 9:1-9, *see also* Tr. 24:3-10, Brief Appendix B. The bankruptcy court initially stated that the bankruptcy court would have the power to replace the Bayou Receiver if the Bayou Receiver was involved in wrongdoing, but the bankruptcy court later indicated that the District Court might be the proper court for that issue. Tr. 16:24-17:3, Brief Appendix B.

Based on these findings and conclusions, the bankruptcy court entered the Order Denying Motion of the United States Trustee for the Appointment of a Chapter 11 Trustee. D.E. 49. The United States Trustee thereafter filed a timely notice of appeal.

## Summary of the Argument

When a debtor's property is under the control of a pre-bankruptcy receiver who has replaced unscrupulous management, the Bankruptcy Code requires the appointment of a bankruptcy trustee to succeed the pre-bankruptcy receiver and to administer the bankruptcy estate for the benefit of all creditors. When Congress adopted the Bankruptcy Code, it enacted § 543, which explicitly curtails the authority of custodians, including receivers such as the one in the Bayou case, and barred courts from appointing receivers under § 105(b). The Code also requires custodians to turn over property in their possession or control to the debtor in possession or a chapter 11 trustee to be administered pursuant to the Bankruptcy Code. Permitting receivers appointed before the filing of a chapter 11 petition to remain as bankruptcy management would not only violate federal law; it would also encourage races to non-bankruptcy courthouses and

thereby vitiate statutory procedures designed to ensure the transparency of the process by which bankruptcy trustees are selected. Furthermore, real confusion would arise over whether the receivers were acting pursuant to the ad hoc terms of the orders appointing them or the fixed statutory requirements of the Bankruptcy Code. Congress' carefully thought-out statutory scheme for selecting independent estate fiduciaries cannot be circumvented by permitting a receiver to manage the debtor because of terms contained in the now-superseded pre-bankruptcy order originally appointing the receiver.

## Argument

### A.    The bankruptcy court erred when it held that the Bayou Receiver could act as management for the debtor-in-possession.

Even since he filed the chapter 11 petitions for the Bayou debtors, the Bayou Receiver has been a "custodian" of the property of those entities. As defined by federal law, a "custodian" includes every "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101(11)(A). The application of this definition to the facts of this case is straightforward. Here, the District Court: (a) in a case not under title 11 of the U.S. Code; (b) appointed the Bayou Receiver "to be the federal equity receiver" of the Bayou entities, Receivership Order ¶ 1, p. 2, Brief Appendix A; (c) to have "complete jurisdiction and control over" all property of those entities , Receivership Order ¶ 2, p. 2, Brief Appendix A. Because the Bayou Receiver is a custodian, he is subject to the requirements of 11 U.S.C. § 543.

Under § 543, the Bayou Receiver is expressly prohibited from "tak[ing] any action in the administration of [] property of the debtor . . . or property of the estate . . . except such action as is necessary to preserve such property." 11 U.S.C. § 543(a). Instead, federal law requires the Bayou Receiver to turn over to the bankruptcy trustee all property of the debtor held by him and to file an accounting of property of the debtor that at any time was in his possession, custody, or control. 11 U.S.C. § 543(b). The Bayou Receiver, as a custodian, must turn all estate property over to the debtor in possession, or if a chapter 11 trustee has been appointed, to the trustee. 11 U.S.C. §§ 1106 and 1107.

These provisions expressly prohibit the Bayou Receiver from administering the debtors' property after the filing of Bayou's chapter 11 petitions. *In re 400 Madison Ave. Ltd. Partnership*, 213 B.R. 888, 894 (Bankr. S.D.N.Y. 1997). Under § 543 of the Bankruptcy Code, the Bayou Receiver is neither a debtor-in-possession nor a trustee and therefore cannot act in either of those capacities. *Id.* at 894; *see also In re Plantation Inn Partners*, 142 B.R. 561, 563-4 (Bankr. S.D. Ga. 1992) (improper to vest receiver with obligations of debtor in possession).

The limitations on the authority of receivers under the Bankruptcy Code represent a change from prior law. Under the Bankruptcy Act of 1898, receivers were frequently appointed in bankruptcy cases. The bankruptcy courts selected receivers and trustees. When Congress enacted the Bankruptcy Reform Act of 1978, it "sought to separate the administrative duties in bankruptcy from the judicial tasks, leaving the bankruptcy judges free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination." H.R.Rep. No. 764, 99th Cong., 2d Sess. 18 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5227, 5230. Accordingly, the Bankruptcy Code expressly

prohibits a court from appointing a receiver in a bankruptcy case. 11 U.S.C. § 105(b). "The

Bankruptcy Code has ample provision for the appointment of trustees when needed. Any

appointment of a receiver would simply circumvent the established procedures." H.R. Rep. No

595, 95th Cong., 1st Sess. 317 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5815.

  Under the Bankruptcy Code, the United States Trustee initially appoints trustees, and

unsecured creditors are given the right to elect trustees. 11 U.S.C. §§ 701, § 702 (appointments

and elections of chapter 7 trustees); 11 U.S.C. §1104(b)(1),(d) (elections and appointments of

chapter 11 trustees). When a trustee election is held, the Bankruptcy Code sets forth strict

requirements for voting eligibility and for calculating the percentage of claims held. 11 U.S.C.

§ 702; *see* 6 *Collier on Bankruptcy* ¶ 702 (Lawrence P. King, et al. eds., 15th ed. rev. 2006).

(discussing standards for electing trustees). To assure that an elected trustee is not selected by

creditors holding a small amount of claims against the debtor, holders of at least twenty percent

of the dollar amount of eligible claims must request the election and vote. 11 U.S.C. § 702(b),

(c)(1). Creditors cannot vote if they have an adverse interest. 11 U.S.C. § 702(a)(2). A creditor

who received a possibly preferential transfer will not be permitted to vote in a trustee election.

*In re Centennial Textiles, Inc.*, 209 B.R. 31, 33 (Bankr. S.D.N.Y. 1997). A report of election is

filed. Fed. R. Bankr. P. 2003(d). If an election is disputed, the bankruptcy court will resolve the

dispute by, among other things, determining what creditors were eligible to vote for a trustee.

*See Centennial Textiles,* 209 B.R. at 33 (resolving such a dispute). Furthermore, the improper

solicitation of votes by a candidate for trustee may result in the disapproval of the election. *In re*

*Dalsimer & Co.,* 56 F.2d 644, 645-46 (S.D.N.Y. 1932). While no one suggests that the

procedures followed by the District Court in appointing the Bayou Receiver were anything other

than exemplary, those procedures clearly did not mirror the requirements of the Bankruptcy
Code for the selection of an independent fiduciary to administer a chapter 11 estate.

If the Bayou Receiver is permitted to remain in possession of the estate notwithstanding
the requirements of § 543, it is easy to envision a future situation where multiple state or federal
courts, at the instance of creditors with differing interests, appoint multiple receivers for the same
entity. Presumably the first such receiver to file a chapter 11 petition for the debtor entity would
then argue that she, and none of the other receivers, is permitted by the terms of her order of
appointment to serve as debtor in possession. In other words, affirming the Bayou Receiver's
effort to remain in possession would set the stage for the classic "race to the courthouse." Each
plaintiff group will want their selected receiver to manage the bankruptcy case, and that receiver
might be beholden to that constituency. For example, in this case, Bayou investors who received
redemptions may have participated in the selection of the Bayou Receiver. Bankruptcy policy
eschews races to the courthouse that allow one creditor to impede others solely by acting
quickly. *Cf. Celotex Corp. v. Edwards*, 514 U.S. 300,310, 115 S. Ct. 1493, 1500 (1995); *Union
Bank v. Wolas,* 502 U.S. 151, 162, 112 S. Ct. 527, 533 (1991) (discussing "race to the
courthouse" in context of bankruptcy preferences). The United States Trustee need not show
that these harms occurred in this case. The possibility of harm in this or other cases is sufficient.
*Cf. Weil v. Neary*, 278 U.S. 160, 173  49 S. Ct. 144, 149 (1929) (first using oft-quoted
bankruptcy language about tendency to harm as opposed to actual harm). Accordingly, when an
equity receiver is the only one serving as management, the appointment of a chapter 11 trustee
pursuant to the explicit guidelines of the Bankruptcy Code will prevent the manipulation of the
system and assure that the estate fiduciary represents the interests of all creditors.

Notwithstanding the clear dictates of the Bankruptcy Code and guidance provided by its legislative history, the bankruptcy court ruled that the Bayou Receiver did not have to comply with the turnover requirement of § 543. It based this decision on its view that the Bayou Receiver is not a custodian; the court held, "[t]he substance of the order is that [the Receiver] . . . is not simply a custodian. He is given the management of these entities." Tr. 9:7-9; Brief Appendix B. In reaching this conclusion, however, the bankruptcy court ignored a fundamental underpinning of the District Court action. The sole basis for the appointment of the Bayou Receiver was the request by some of Bayou's creditors for the appointment of a federal equity receiver in a non-bankruptcy case. *See* Receivership Order, ¶ 1, p. 2 (invoking federal equity receivership authority and duties in accordance with 28 U.S.C. § 754, 28 U.S.C. § 959, Fed. R. Civ. P. 66, and inherent powers), Brief Appendix A. The corporate governance paragraph that the bankruptcy court quoted is preceded and qualified by the District Court's reference to the "duties and responsibilities" of the Receiver. Receivership Order, ¶ 7.[3]  But for the Receivership Order the Bayou Receiver would have had no authority whatsoever. Therefore, because the Receiver's authority to "manage" these entities is completely dependent upon his status as a custodian, this authority cannot serve as a basis to allow the Bayou Receiver to violate § 543 of the Bankruptcy Code by allegedly serving as a debtor in possession and refusing to turn over estate property. Nor, given the clear prohibition of § 105(b), may the bankruptcy court appoint the pre-bankruptcy Bayou Receiver to act as a receiver in the Bayou bankruptcy cases.

---

3 This situation differs from one where a business entity voluntarily changes management pursuant to its organizational documents and applicable non-bankruptcy law and then seeks bankruptcy relief. The Bankruptcy Code generally does not alter that result. 11 U.S.C. § 1107 (debtor-in-possession has powers of a trustee); 11 U.S.C. § 1104(a)(defining bases to remove management).

Based upon the foregoing, it is clear that the bankruptcy court erred by not ordering the appointment of a chapter 11 trustee to whom the Bayou Receiver could turn over estate property pursuant to 11 U.S.C. § 543.

**B.      The Bankruptcy Code formalizes trustee obligations to protect creditors, but these requirements are not imposed on Bayou Receiver under the Receivership Order.**

The Bankruptcy Code contains numerous mandatory provisions regulating a chapter 11 trustee's administration of a chapter 11 estate.  These mandatory provisions establish how a chapter 11 case must be administered when the estate is in the hands of an independent fiduciary. Under the Receivership Order, the Bayou Receiver, while acting as a de facto quasi-trustee in these cases, is subject to requirements that differ substantially from those of the Bankruptcy Code.  The following chart illustrates distinctions between the Bayou Receiver's duties and obligations under the Receivership Order and a chapter 11 trustee's duties and obligations under the Bankruptcy Code:

**Brief of Appellant United States Trustee – Page 15**

| Duties of a Trustee under the Bankruptcy Code | Duties of the Bayou Receiver under the Receivership Order |
|---|---|
| Must be disinterested. 11 U.S.C. § 1104(b)(1),(d); 11 U.S.C. §101(14) | Does not require disinterest. |
| Trustee must post a surety bond. 11 U.S.C. § 322(a) | Does not require a bond absent a hearing. Receivership Order, ¶ 21. Bayou Receiver is indemnified. Receivership Order, ¶ 19. |
| Defers compensation until trustee makes disbursements to creditors and court approves compensation. 11 U.S.C. §§ 326(a), 331. | Compensation is monthly. Receivership Order, ¶ 9. |
| Compensation subject to a statutory cap and must be reasonable. 11 U.S.C. §§ 326(a), 330(a)(1)(A). | Compensation is the "greater of" $20,000 per month or two percent of the net amount of funds distributed. Receivership Order, ¶ 9. |
| Trustee must undergo a background check. U.S. Trustee requirement. | Not required. |
| Investments must be "insured or guaranteed by the United States" or subject to a bankruptcy court order authorizing an exception. 11 U.S.C. § 345 | Bayou Receiver confers with unofficial committee about investments. Receivership Order, ¶ 7(k). |
| Settles cases subject to Court approval on notice to creditors. Fed. R. Bankr. P. 9019. | Settles cases after conferring with the unofficial committee. Receivership Order, ¶ 7(d). |
| Requires broad investigation of debtor and filing of public report of investigation with the Court. 11 U.S.C. § 1106(a)(3) - (4). | Requires limited investigation of claims of the Bayou Entities. Confidential report to be provided to only the unofficial committee. Receivership Order, ¶ 7(b). |
| Reporting contemplates recommendation whether or not to file a plan or to convert the bankruptcy case to chapter 7. 11 U.S.C. § 1106(a)(5) | Bayou Receiver files a liquidation plan "[u]nless a case is filed under the Bankruptcy Code." Receivership Order, ¶ 7(h) |
| Upon the appointment of a trustee, any party in interest may file a chapter 11 plan of reorganization. 11 U.S.C. § 1121(c)(1) | Bayou Receiver has exclusive right to file a plan unless bankruptcy case is filed. Receivership Order, ¶ (h). Because Bayou Receiver purports to be the debtor in possession, Bayou Receiver now claims exclusive right to file a chapter 11 plan. 11 U.S.C. § 1121(b). |

As the chart establishes, the Bankruptcy Code imposes substantial requirements on a trustee to protect creditors' interests. The Bayou Receiver and Creditors' Committee contend that the Receivership Order makes the Bayou Receiver management and therefore a debtor in possession

governed by § 1107 of the Bankruptcy Code. But the requirements of the Receivership Order

differ substantially from those of §§ 1107 and 1106, and that deviation is improper under federal

law. *See, e.g., In re 400 Madison Ave. Ltd Partnership,* 213 B.R. 888 (Bankr. S.D.N.Y. 1997).

("[N]o section of the Code includes a receiver who remains in possession within the definition of

trustee, [so] the receiver does not take on the obligations of a trustee nor the somewhat different

ones of a debtor-in-possession.").

Based upon the foregoing, this Court must direct the bankruptcy court to order the

appointment of a disinterested trustee for the Debtors. Only such an appointment will clarify that

the Bankruptcy Code alone governs the responsibilities of the person acting as a fiduciary for

these estates.

**C.    The bankruptcy court had the power to order the appointment of a bankruptcy trustee, and the bankruptcy court erred when it held that it was bound to violate the Bankruptcy Code due to the Receivership Order.**

The bankruptcy court denied of the United States Trustee's motion seeking the

appointment of a chapter 11 trustee based upon that court's doubts over whether it had

jurisdiction to displace a pre-bankruptcy receiver appointed by a district court in a non-

bankruptcy case. As federal courts, bankruptcy courts have jurisdiction to determine their own

jurisdiction, *e.g. United States v. United Mine Workers,* 330 U.S. 258, 291, 67 S. Ct. 677, 695

(1947). In addition, bankruptcy courts must determine whether they have the power to resolve

particular bankruptcy issues. 28 U.S.C. § 157(b)(3). In this case, the bankruptcy court

incorrectly held that it lacked the power to resolve a motion seeking the appointment of a trustee.

Under 28 U.S.C. §§ 1334(a) and (e), district courts have exclusive jurisdiction over bankruptcy cases before them and all property of the debtor and of the estate. 28 U.S.C. § 1334(a),(e). As is discussed above, this Court, pursuant to 28 U.S.C. § 157(a), has delegated all cases under title 11 to the bankruptcy judges of this district. Given this, the bankruptcy court has jurisdiction over this case, and all property of the debtor and the estate, and it was bound to follow the requirements of §§ 543, 105(b), and 1104(a) of the Bankruptcy Code by precluding the pre-bankruptcy Bayou Receiver from continuing to control debtor and estate assets, something that violated federal law.

While an issue may properly fall within bankruptcy jurisdiction, the issue of the bankruptcy court's power involves a determination of where a particular issue falls within the three possibilities: core, "related to," or excluded from bankruptcy court authority. Bankruptcy courts most clearly have the power to resolve core issues, 28 U.S.C. § 157(b)(1); and precedent in this district holds that appointment of a trustee is a core matter. *Ngan Gung Rest., Inc. v. Official Committee of Unsecured Creditors (In re Ngan Gung Rest., Inc.)*, 195 B.R. 593, 597 n. 3 (S.D.N.Y. 1996). That precedent was correctly decided.

"Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *United States Lines, Inc. v. American Steamship Owners Mut. Protection Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 2005)(internal citation omitted); *see also Jamaica Shipping Co., Ltd. v. Orient Shipping Rotterdam (In re Millenium Seacarriers, Inc.)*, 458 F.3d 92 (2d Cir. 2006) (per curiam) (applying same standard). The Second Circuit construes the bankruptcy court's core powers broadly. *Id.* The appointment

of a bankruptcy trustee profoundly impacts the administration of the bankruptcy estate. 28 U.S.C. § 157(b)(2)(A) (defining administration of estate as core matter). The request and standards for appointment are governed by § 1104, a statute that applies only because a bankruptcy case is pending. 11 U.S.C. § 1104. Thus, appointment of a bankruptcy trustee is unique to bankruptcy proceedings and impacts a core bankruptcy function, the control of the bankruptcy estate. The appointment of a trustee is a core issue.

The Receivership Order did not divest the bankruptcy court of its core jurisdiction to consider and rule on a motion seeking the appointment of a chapter 11 trustee. In a variety of contexts – including fact patterns similar to that of this case – federal courts have recognized that bankruptcy law supercedes other law and court orders. Examples include:

- District court's collateral order ignoring the bankruptcy court's injunction reversed. A bankruptcy court's order enjoining draw on supersedeas bond must be honored by other federal district courts absent appellate reversal. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308-311, 115 S. Ct. 1493, 1499-1501 (1995);

- District court's injunction barring parties from asking for interpretation of stay and relief in bankruptcy court reversed. The need for uniformity in bankruptcy is paramount when multiple parties have the same issue. *Erti v. Paine, Webber, Jackson & Curtis, LLP (In re Baldwin-United Corp.)*, 765 F. 2d 343, 347-48 (2d Cir. 1985);

- An assignee for the benefit of creditors became a "custodian" under the Bankruptcy Code and therefore could not pursue state law avoidance actions. Bankruptcy ends creditors' race to courthouse by creating a ratable distribution

system and affords a trustee the power to avoid preferential transfers. The "trustee exercising powers to liquidate a corporation is not hand-picked by the debtor, as was the [assignee] Sherwood, but appointed and supervised by the United States Trustee, an official of the Department of Justice . . . or elected by the creditors . . . to ensure impartiality." *Sherwood Partners, Inc. v. Lycos, Inc. (In re Sherwood Partners, Inc.)*, 394 F.3d 1198, 1203-04 (9th Cir.), *cert. denied*, 126 S. Ct. 1198 (2005);

- Federal district court erred by failing to honor bankruptcy automatic stay even though federal district court's federal equity receivership arose in first filed case. Bankruptcy was preferred to federal equity receivership. *Gilchrist v. General Elec. Capital Corp.*, 262 F.3d 295, 297-98 (4th Cir. 2001) (relying on *Erti v. Paine, Webber, Jackson & Curtis, LLP (In re Baldwin-United Corp.)*, 765 F. 2d 343, 347-48 (2d Cir. 1985));

- "Of the fact that the suit was begun in the circuit court with the express leave of the court of bankruptcy it suffices to say that the latter was not at liberty to surrender its exclusive control over matters of administration, or to confide them to another tribunal." *United States Fid. & Guar. Co. v. Bray*, 225 U.S. 205, 218, 32 S.Ct. 620, 625 (1912).

The appellate record suggests that the District Court intended to honor the Bankruptcy Code's subsequent impact, Receivership Order, ¶ 7(e) (limiting the Receiver's powers to those permitted under the Bankruptcy Code), Brief Appendix A, and that the bankruptcy court intended to honor the District Court's authority. The result of this mutual deference is a

quagmire. The effective operation of the bankruptcy system depends on the bankruptcy court's ability and willingness to exercise its core jurisdiction and to compel compliance with the mandatory requirements of the Bankruptcy Code in all bankruptcy cases, including the Bayou cases. Nothing inherently distinguishes a Southern District of New York court order from an order of a federal district court or a state court in another jurisdiction. Just as orders enjoining parties from acting in the bankruptcy court or disagreeing with a bankruptcy court's ruling cannot eviscerate bankruptcy law, so also the pre-bankruptcy Receivership Order cannot license a bankruptcy court to violate the Bankruptcy Code by allowing a receiver to administer a debtor's estate in contravention of 11 U.S.C. §§ 543 and 105(b).

In the federal system, the laws of Congress reign supreme, subject only to the constraints of the Constitution. U.S. Const. art.VI, cl. 2. Certainly, the bankruptcy court's reluctance to diverge from the District Court's Receivership Order is understandable. And, without question, the District Court order was entirely proper up to the moment Bayou went into bankruptcy. But thereafter federal law prohibited the Bayou Receiver from controlling or operating the debtor in possession. Because the debtor in possession's managers are convicted felons who cannot be trusted to fulfill the responsibilities of a debtor in possession, the bankruptcy court erred in not ordering the appointment of a federal bankruptcy trustee under 11 U.S.C. § 1104(a). *See C.F.T.C. v. Weintraub*, 471 U.S. 343, 355; 105 S.Ct. 1986, 1994 (1985) (a bankruptcy trustee's fiduciary duties run to all creditors and equity security holders).

**Conclusion**

For these reasons, the United States Trustee respectfully asks this Court to reverse the order entered below and remand this case for additional proceedings consistent with such reversal.

Respectfully submitted,

Of Counsel:

Roberta A. DeAngelis
Acting General Counsel

Matthew Sutko
Walter W. Theus, Jr.
United States Department of Justice
Executive Office for United States Trustees
20 Massachusetts Avenue, NW
Washington, D.C. 20530
(202) 307-1399

DIANA ADAMS,
ACTING U.S.TRUSTEE

/s/ Lisa L. Lambert
Lisa L. Lambert
Office of United States Trustee
33 Whitehall St., 21st Floor
New York, NY 10004
(212) 510-0500
Lisa.L.Lambert@usdoj.gov

*ATTORNEYS FOR APPELLANT*
*DIANA G. ADAMS,*
*ACTING U.S. TRUSTEE*
*FOR REGION 2*

# Certificate of Compliance and Service

I certify that the preceding brief comports with page limitations of Federal Rule of Bankruptcy Procedure 8010(c). I further certify that on September 21, 2006, copies of this brief were provided to the following parties by first class mail and by additional methods reflected below:

## Bayou Appeal -- Service List

The Honorable Colleen McMahon
United States District Court
300 Quarropas Street, Room 533
White Plains, New York 10601-4150
*Overnight bound copy and appellate record binder*

Jeff J. Marwil
c/o Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
Email Jmarwil@jennerblock.com
*Overnight bound copy*

Elise Scherr Frejka
Dechert, LLP
30 Rockefeller Plaza
New York, NY 10112
Email: elise.frejka@dechert.com
*Overnight bound copy of brief and appellate record binder*

Robert M. Novick
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway, 21st Floor
New York, NY 10019
Email: rnovick@kasowitz.com
*Overnight bound copy*

Richard A. Kirby
Preston, Gates, Ellis & Rouvelas
1735 New York Ave., Suite 500
Washington, DC 20006-5209
Email: richardk@prestongates.com
*Overnight bound copy and appellate record binder*

Philip Bentley
Kramer Levin Naftalis & Frankel, LLP
1177 Ave. of the Americas
New York, NY 10036
Email: pbentley@kramerlevin.com
*Mail copy*

Lori Lapin Jones
27 Shadow Lane
Great Neck, NY 11021
Email: lorelij007@aol.com
*Mail copy*

Joseph Thomas Moldovan
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022-4731
Email: bankruptcy@morrisoncohen.com
*Mail copy*

George G. Wilder
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, DC 20581
Email: gwilder2@cftc.gov
*Mail copy*

# INDEX TO APPELLANT'S APPENDIX

**Receivership Order**                              **Appendix A**

**Transcript from Hearing on
Motion to Appoint a Trustee**              **Appendix B**

**Bankruptcy Court's Order Denying
Motion to Appoint a Trustee**              **Appendix C**

**U.S. Trustee's Motion to Appoint
a Trustee**                                        **Appendix D**

**Bankruptcy Court's Docket Sheet**      **Appendix E**