# APPELLANT'S BRIEF APPENDIX B

# Transcript of Hearing on Motion to Appoint a Trustee

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

2

3        ------------------------------X
                                      :
4    In Re:                           :    Case No. 06-22306
                                      :
5       BAYOU GROUP, LLC              :
                                      :    June 29, 2006
6                                     :
                          Debtor.     :    300 Quarrapos Street
7        ------------------------------X    White Plains, NY

8                     TRANSCRIPT OF MOTION
9          BEFORE THE HONORABLE ADLAI S. HARDIN, JR.
                UNITED STATES BANKRUPTCY JUDGE

10

11   APPEARANCES:

12   For the Debtors:              H. JEFFREY SCHWARTZ, ESQ.
                                   Dechert LLP
13                                 30 Rockefeller Plaza
                                   New York, New York  10112

14
                                   ELISE SCHERR FREJKA, ESQ.
15                                 Dechert LLP
                                   30 Rockefeller Plaza
16                                 New York, New York  10112

17                                 GARY MENNITT, ESQ.
                                   Dechert LLP
18                                 30 Rockefeller Plaza
                                   New York, New York  10112

19

20   For Official Committee       HOWARD W. SHAUB, ESQ.
        Of Unsecured Creditors:   Kasowitz, Benson, Torres
21                                    & Friedman, LLP
                                   1633 Broadway
22                                 New York, New York  10019

23   For Official Committee of    RICHARD KIRBY, ESQ.
        Unsecured Creditors:      Preston Gates, Ellis &
24                                    Rouvelas Meeds, LLP
                                   1735 New York Avenue NW
25                                 Suite 500
                                   Washington, D.C., 20006-5209

```
1                    UNITED STATES BANKRUPTCY COURT
                     SOUTHERN DISTRICT OF NEW YORK
2

3   For the United States      ELIZABETH AUSTIN, ESQ.
      Trustees Office:         LISA LAMBERT, ESQ.
4                              DIANA ADAMS
                               33 Whitehall Street
5                              21st Floor
                               New York, New York  10004
6
    For Eric and Diane         PHILLIP BENTLEY, ESQ.
7     Garfinkel:               Kramer, Levin, Naftalis,
                                 & Frankel, LLP
8                              919 Third Avenue
                               New York, New York  10022
9

10

11

12

13
    Court Transcriber:         RUTH ANN HAGER
14                             TypeWrite Word Processing Service
                               356 Eltingville Boulevard
15                             Staten Island, New York 10312

16

17

18

19

20

21

22

23

24

25


    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service
```

3

1              THE COURT:  Bayou.  Hello.

2              MS. DAWSON:  Good morning, Your Honor.  Elizabeth

3     Austin, Assistant United States Trustee for the Southern

4     District of New York.  With me today is Lisa Lambert, Trial

5     Attorney.

6              THE COURT:  Hello.

7              MS. DAWSON:  Southern District of New York as well as

8     the acting United States Trustee Diane Adams [Ph.].

9              THE COURT:  Okay.  Ms. Adams, hello.

10             MR. SCHWARTZ:  Good morning -- good afternoon, Your

11    Honor -- good morning, Your Honor.  I apologize that we're a

12    bit late.

13             THE COURT:  Good morning.  We've got a lot of morning

14    left.

15             MR. SCHWARTZ:  Indeed, and we're looking forward to

16    it.  Jeffrey Schwartz from Dechert, LLP on behalf of the

17    debtors in possession.  With me is Gary Mennitt and Elise

18    Frejka.

19             MR. MENNITT:  Good morning.

20             MR. SCHWARTZ:  And we have Mr. Marwil, the managing

21    member of each of the Bayou --

22             THE COURT:  Hello, Mr. Marwil.

23             MR. SCHWARTZ:  -- entities with us as well, Your

24    Honor.  Thank you.

25             MR. KIRBY:  Good morning, Your Honor.  Richard Kirby

4

1  from the law firm of Preston, Gates from Washington, D.C. on

2  behalf of the official unsecured creditors committee.  With me

3  is co-counsel Howard Schub from the Kasowitz, Benson firm.

4          THE COURT:  All right.

5          MR. SCHUB:  Good morning.

6          THE COURT:  Sir?

7          MR. BENTLEY:  Good morning, Your Honor.  Philip

8  Bentley of Kramer, Levin on behalf of Eric and Diane Garfinkel

9  [Ph.].

10         THE COURT:  Okay.  And the Garfinkels.  Let me ask

11  Ms. Austin, are you going to be the voice?

12         MS. AUSTIN:  Yes, Your Honor.  I'll be making the

13  argument today.

14         THE COURT:  Let me tell you the fundamental problem

15  that I -- or problems that I have, but before I do that, I'd

16  like to ask two questions.

17         Number one, does the U.S. Trustee's Office perceive

18  any defect, legal or otherwise, in Judge McMahon's order

19  appointing Mr. Marwil as receiver with the portfolio that the

20  order that she signed provides?

21         MS. AUSTIN:  The prepetition order of the District

22  Court, Your Honor.  It thoroughly is an appropriate order that

23  appoints a receiver.

24         THE COURT:  It is.

25         MS. AUSTIN:  It's a federal receiver.

5

1       THE COURT:  It is appropriate, not inappropriate.

2       MS. AUSTIN:  It is not an inappropriate order for the

3  appointment of a federal receiver and we don't dispute

4  Mr. Marwil's qualifications to serve as that federal receiver.

5       THE COURT:  Okay.  My next question was going to be

6  if there is a problem with the District Court order surely this

7  court is not the right court to deal with the problem, is it?

8       MS. AUSTIN:  That's --

9       THE COURT:  They may be -- the District Court may be

10  the right court to deal with the problem with one of my orders,

11  but I don't perceive I as the right person to deal with any

12  problems with the District Court order.  Correct?

13       MS. AUSTIN:  That's correct, Your Honor.  We don't

14  see a problem with the District Court order --

15       THE COURT:  Okay.  It's --

16       MS. AUSTIN:  -- per se.

17       THE COURT:  -- lawful, proper and enforceable.

18       MS. AUSTIN:  Correct, Your Honor.

19       THE COURT:  Okay.  The next question is --

20       MS. AUSTIN:  But, Your Honor, it is pursuant to

21  Section 362 of the Bankruptcy Code stayed at this juncture.

22       THE COURT:  I'm sorry?

23       MS. AUSTIN:  It is pursuant to Section 362 of the

24  Bankruptcy Code stayed.  I mean, the filing of the Bankruptcy

25  Court even stays litigation that is before the Supreme Court,

6

1  to the court order itself is stayed pursuant to Section 362.

2       THE COURT:  Is that in your papers?  That's a

3  shocking notion to me that is -- it's more than surprising.

4       MS. AUSTIN:  Well, I mean, it is obviously subject to

5  543 and the receiver's rights as a custodian under Section 543,

6  but for all other aspects, yes, Your Honor, it is stay.  I

7  mean, that's a basic tenantment of bankruptcy law that

8  prepetition court orders, regardless of the Court, are stayed

9  upon the filing of the bankruptcy.

10      THE COURT:  Okay.  Well, that's something you're

11 going to have to brief and you're going to have to show me.  I

12 can't imagine that the judge's order -- the District Court

13 order appointing Mr. Marwil is stayed.

14      MS. AUSTIN:  Subject to the provisions of Section

15 553 -- 43, excuse me.

16      THE COURT:  All right.  Well, let me tell you the

17 fundamental problem that I have with your position here.

18 Mr. Marwil is called a receiver, but Judge McMahon's order goes

19 well beyond that.  And it is the beyond that aspect of Judge

20 McMahon's order that I believe your motion ignores.  Maybe I

21 should look specifically at the order.

22      It's a lengthy order, but I'm just going to quote

23 that portion of the order that's quoted at page 12 of the

24 Dechert Price or the Dechert memorandum.  It says, "Corporate

25 governance," colon.  This is from the order, correct, sir?

1    MR. SCHWARTZ:  Yes, Your Honor, verbatim.

2    THE COURT:  "Corporate governance:  Pursuant to 28

3  USC § 959(b), [Marwil shall] succeed to be the sole and

4  exclusive managing member and representative of each of the

5  Bayou Entities with the sole and exclusive power and authority

6  to manage and direct the business and financial affairs of the

7  Bayou Entities, including without limitation, the authority to

8  petition for protection under the Bankruptcy Code, 11 USC §

9  110" -- excuse me -- "§ 101 et seq.) For any or all of the

10  Bayou Entities and in connection therewith be and be deemed a

11  debtor in possession for any or all of the Bayou Entities in

12  proceedings under Chapter 11 of the code, and prosecute such

13  adversary proceedings and other matters as may be permitted

14  under the code and/or applicable law."

15    Now, what you're asking me to do by your motion is to

16  supplant Mr. Marwil as the debtor in possession or as the

17  manager of the debtor in possession with the sole and exclusive

18  authority to operate the debtors in possession.

19    You're asking me to supplant Mr. Marwil with a

20  trustee.  The problem that I have is that you are asking me to

21  confound the District Court order, and I don't know how I can

22  possibly do that.

23    MS. AUSTIN:  Your Honor --

24    THE COURT:  I think if you want to do that, don't you

25  need to move for relief from the District Court order in the

8

1  District Court which issued the order and which made perfectly

2  clear that Mr. Marwil is not just a receiver?  He is the

3  managing member.  He is the person in charge.  He is management

4  of each of these debtors given under Judge McMahon's order.

5       The power to operate as debtor in possession each of

6  these entities and you're seeking to supplant Mr. Marwil, not

7  just as receiver, but as a person who has the authority given

8  to him by Judge McMahon to operate as debtor in possession.

9  Not trustee.  Debtor in possession.

10      You've got to help me with that, because otherwise, I

11 have no way that I can see that I can rule in your favor.

12      MS. AUSTIN:  Certainly, Your Honor.  I think the key

13 language of what this order says it says, "As may be permitted

14 under the code or applicable law."  I have no doubt that the

15 District Court was attempting to basically erase the provisions

16 of Section 543 or erase --

17      THE COURT:  Just a second.  You -- let's go to the --

18      MS. AUSTIN:  -- the provisions of 1104.

19      THE COURT:  -- Code right now, then.  What is the

20 provision that you say would be erased?

21      MS. AUSTIN:  Section 543, Your Honor.  The --

22      THE COURT:  Okay.  Let's look at it.  Section 543 is

23 headed -- entitled, rather, "Turnover of property by a

24 custodian."  Okay.

25      This is not a custodian.  Mr. Marwil is not simply a

9

1    custodian.  He is not a custodian any more than had the

2    District Court approved the appointment of a new board of

3    directors, a new president, somebody with a title other than

4    receiver.  In fact, I'm not sure -- I haven't studied her order

5    that carefully.  It's many pages long.  But I don't know how

6    many times the word "receiver" appears, other than the title in

7    the order.  But the substance of the order is that Mr. Marwil

8    is not simply a custodian.  He is given the management of these

9    entities.  He is the new board of directors, the new president,

10   CEO, whatever title you want.  That's the nature of his

11   responsibilities.

12          And lest there be any doubt about it, the order that

13   Judge McMahon signed states that "In connection therewith,"

14   namely his having the "sole and exclusive power and authority

15   to manage and direct the business and financial affairs of the

16   Bayou Entities."  In connection with that it says, "... and in

17   connection therewith be and be deemed a debtor in possession

18   for any or all of the Bayou Entities in proceedings under

19   Chapter 11 of the Code ...."  So this -- we're not dealing with

20   a custodian or a receiver.  Section 543 has no application.

21          MS. AUSTIN:  Well, Your Honor, once again I'd point

22   out that the key words in that order is "as permitted by the

23   Bankruptcy Code."  Mr. Marwil was, indeed, appointed as a

24   receiver under those applicable federal laws, which allow the

25   District Court to appoint a receiver.

10

1      Under the Bankruptcy Code definitions of a custodian

2  under Section 101(11)(a) and (c) -- actually (c) "trustee

3  receiver or agent under applicable law or under a contract that

4  is appointed or authorized to take charge of the property of

5  the debtor for purposes of enforcing a lien against the

6  property for the purposes of general administration of such

7  property with benefit of the debtor's creditors is, indeed, a

8  custodian under the Bankruptcy Code."

9      THE COURT:  All right.  Then what you're now

10  saying -- this is reason I asked you the first question I asked

11  you -- what you're now saying is that Judge McMahon entered an

12  order that she did not have power to enter.  And if that's your

13  argument, then this is the wrong court to address that

14  argument, because it is crystal clear that the purpose of Judge

15  McMahon's order was to appoint somebody who was in fact and law

16  the equivalent of a new board of directors, new CEO, new

17  president, new CFO as a debtor in possession.  And so we are

18  not simply dealing here with a custodian or a receiver.

19      Now, if you think the Court didn't have power to do

20  that, then this is not the Court to reverse Judge McMahon's

21  order.  I won't do it.  I haven't the power to do it and I

22  won't do it.

23      In addition, in terms of the appointment of a

24  receiver under Section 1104, is it?

25      MS. AUSTIN:  Yes, Your Honor.  Appointment of trustee

1   under 1104.

2       THE COURT:  Aside from your argument -- excuse me, or

3   appointment of a trustee under Section 1104, aside from your

4   argument that Mr. Marwil is a receiver or a custodian, there is

5   no ground asserted in your motion to oust Mr. Marwil from the

6   management of these debtors as debtor in possession.  There's

7   been no allegation of incompetence, impropriety, dishonesty,

8   none of the grounds normally associated with the displacement

9   of management and the appointment of a trustee has been

10  asserted in your motion.  The only ground you've asserted has

11  cause for the appointment of a trustee is that he's really a

12  receiver and a custodian.  But it is perfectly clear to me that

13  he's really not just a receiver or a custodian, so is there

14  anything else?

15      MS. AUSTIN:  Well, Your Honor, I'd just simply point

16  out that obviously we have issues with the -- our main issues

17  here are with respect to the standing and the procedural

18  concerns that someone who is not properly vested fiduciary for

19  the state proceeding to management --

20      THE COURT:  But you see, when you say that you are

21  saying that Judge McMahon did not have the power to invest

22  Mr. Marwil with the capacity to act as the proper fiduciary

23  manager of these debtors.  And therefore, what you're saying is

24  that she exceeded her power and violated the law.  And if

25  that's --

12

1          MS. AUSTIN:  I don't think that --

2          THE COURT:  -- your argument, you're going to have to

3    take it somewhere else, Your Honor.

4          MS. AUSTIN:  I understand, Your Honor.  I think it is

5    our position that that was not her intention, that once --

6          THE COURT:  That what was not her intention?

7          MS. AUSTIN:  To supplant the Bankruptcy Code, to

8    supplant Section 524 and supplant 1104, but we hear what you're

9    saying.

10          THE COURT:  Uh-huh.

11          MS. AUSTIN:  For that reason, Your Honor, then we

12    would respectfully request to withdraw the reference so that

13    this matter can be considered --

14          THE COURT:  Well, you'll have to ask --

15          MS. AUSTIN:  -- by this court.

16          THE COURT:  You'll have to ask Judge McMahon to do

17    that in a proper motion.

18          MS. AUSTIN:  But I will also note, Your Honor, that

19    the U.S. Trustee's Office was obviously not involved at the

20    District Court level.  We were not given notice that this order

21    was being entered in.  Obviously, we were only aware of this

22    once the bankruptcy was filed.  We obviously would have had no

23    standing at the time the order was entered, because until a

24    bankruptcy is filed --

25          THE COURT:  Right.

13

1       MS. AUSTIN:  -- there is no standing for the U.S.
2  Trustee's Office to appear and be heard --
3       THE COURT:  Yeah.
4       MS. AUSTIN:  -- even if we had been made aware of the
5  order.  We are obviously clearly quite concerned with the
6  precedential affect of an order like this.  Whereas there may
7  not be bad results in this case, we understand what Your Honor
8  is saying, and we had -- there's actually no per se rule
9  against a receiver becoming a trustee and certainly that is --
10  whereas the U.S. Trustee's Office can't commit ahead of time --
11       THE COURT:  Yeah.
12       MS. AUSTIN:  -- as to who would be the trustee, we
13  certainly would listen to the parties and assuming Mr. Marwil
14  meets the disinterested standardness, that will all be taken
15  into consideration so it's not as if we're trying to
16  necessarily displace Mr. Marwil.  We're trying to get it into
17  the proper procedural format.  And we have --
18       THE COURT:  Right.
19       MS. AUSTIN:  We're not here to be obstructionists.
20  We do have a very grave concern with regard to the --
21       THE COURT:  I have no doubt about your good faith and
22  your not wanting to be obstructionists.  That's not the
23  question.  The question is whether or not I have the power to
24  enter an order that I believe would clearly be in defiance of
25  the order that Judge McMahon has entered.

14

1          There just can be no question about it.   The

2   provision that is quoted at page 12, and there are other

3   provisions as well.   I'm not going to burden the record, but

4   there are other provisions of Judge McMahon's order.

5          For example, Paragraph 23, "The Court retains

6   jurisdiction with respect to any matters addressed to" --

7   excuse me -- "addressed in this order including without

8   limitation any and all matters relating to or affecting the

9   receivership estate, the Bayou assets, the receiver, and the

10   scope of authority granted the receiver hereunder."   I don't

11   have that authority under Judge McMahon's order.

12          Paragraph 22, "Except as expressly stated herein,

13   nothing in this order shall be construed to impair, limit, or

14   constrain the receiver's powers under any federal rule of civil

15   procedure, any statute of the United States or any decisional

16   authority construing the powers of or procedural mechanisms

17   available to federal equity receivers."

18          For me to enter the order displacing Mr. Marwil would

19   clearly confound Paragraph 22 of Judge McMahon's order.

20          MS. AUSTIN:   Your Honor, may I take a moment to

21   consult with my client?

22          THE COURT:   Just a moment.

23          Paragraph 15, "The receiver may be removed at any

24   time by the Court" and the Court is the District Court, "or

25   upon the request of the committee or its successors for cause

15

1  as approved by the Court, and a successor shall be named by the

2  Court, after notice to the committee or its successor."

3         And then the next sentence of Paragraph 15, "In the

4  event that the receiver resigns from office, the receiver shall

5  first provide written notice to the committee or its successor,

6  and such resignation shall not be effective until the Court

7  appoints a successor under such conditions as the Court may

8  order."  The court in that paragraph is the District Court, not

9  the Bankruptcy Court.

10         There are other provisions of Judge McMahon's order

11  which I think would clearly be utterly confounded by my

12  granting of the motion and entering an order appointing a

13  Chapter 11 trustee, and thereby displacing Mr. Marwil as the

14  person with "the sole and exclusive power and authority to

15  manage and direct the business and financial affairs of the

16  Bayou Entities including ... in connection therewith to be and

17  be deemed a debtor in possession for any and all of the Bayou

18  Entities in proceedings under Chapter 11 of the Code."

19         MS. AUSTIN:  Well, it --

20         THE COURT:  I just can't imagine any order appointing

21  a Chapter 11 trustee that wouldn't absolutely decimate these

22  provisions that I've averted to in Judge McMahon's order, and

23  this is not the Judge that's going to do that.  You can either

24  appeal and get it before the District Court that way, you can

25  move before Judge McMahon for the relief you seek here, you can

16

1   move to withdraw the reference, you -- whatever, but this isn't

2   the Court to enter an order that completely and totally

3   undermines what Judge McMahon did.

4           MS. AUSTIN:  Your Honor, we're here obviously because

5   we believe Your Honor has jurisdiction --

6           THE COURT:  Right.

7           MS. AUSTIN:  -- over this proceeding.  And for

8   example --

9           THE COURT:  I do have jurisdiction over this

10  proceeding.

11          MS. AUSTIN:  But isn't it -- with theory under that

12  reading of this order, if Mr. Marwil were to, heaven forbid, do

13  something wrong and there were a basis to seek his removal,

14  appointment of a trustee, wouldn't -- couldn't the same

15  argument be made with this --

16          THE COURT:  That might give you --

17          MS. AUSTIN:  -- order that --

18          THE COURT:  -- ground under 1104 to make a motion in

19  this court.  Now -- because at least you would then have cause,

20  but you have no cause here other than that he's been appointed

21  by the District Court.

22          MS. AUSTIN:  Then obviously our position is that he's

23  a custodian.

24          THE COURT:  Now, it may well be if he did something

25  wrong that even in that circumstance the proper court to

17

1  redress that would be Judge McMahon given the various

2  provisions of her order.

3          I express no view on it, since that's not before me,

4  but as it is, I'm sorry, but I have to deny your motion because

5  it would plainly and --

6          MS. AUSTIN:  Your Honor, I would -- if you may, I

7  would ask you to defer ruling so that we may consider

8  withdrawing the reference to seeing if Judge McMahon may be

9  willing to --

10         THE COURT:  I'm going to rule.  It doesn't make any

11  difference whether I rule or withhold the ruling.  As I say,

12  it's very easy to get it before the District Court either by

13  appealing my denial of the motion or moving to withdraw the

14  reference or making a motion before a judge, because you don't

15  know which district judge you'd get, I suppose, with either of

16  those motions; or you could make a motion directly before Judge

17  McMahon seeking leave from her to displace the person she

18  appointed as the manager of these entities with somebody that

19  you would appoint.  Hey, give it a shot, but I'm not the person

20  that can do it.  Fair enough?

21         MS. AUSTIN:  Thank you, Your Honor.

22         THE COURT:  I know you don't agree, but that's the

23  ruling.

24         MS. AUSTIN:  I wouldn't have filed the motion if I

25  thought otherwise.

18

1          THE COURT:  Mr. Schwartz, I didn't give you a chance

2   to argue on it and I know you would have made far more

3   impressive and compendious arguments than I could even think

4   of, but these are the reasons that I'm denying the motion.

5          MR. SCHWARTZ:  Your Honor, I'm -- and we agree with

6   every legal conclusion you've drawn.  I'm --

7          THE COURT:  I express relief at that.

8          MR. SCHWARTZ:  And we applaud it and once the shoes

9   are sold, one should not continue selling, which is a rule of

10  thumb.  But I wanted to make just one statement for the record.

11         THE COURT:  Sure.

12         MR. SCHWARTZ:  And that is, there was a reference to

13  Section 362 of the Code.  362 of the Code does not apply to

14  corporate governance.  All it -- just by way of background, and

15  this was described somewhat in the papers -- the corporate

16  governance provision, as with the other provisions in the

17  District Court order were very carefully crafted with this

18  circumstance in mind.

19         I would -- at the risk of being pelted by others

20  perhaps in the courtroom, I would certainly acknowledge that

21  all that was achieved in the District Court order was to

22  establish corporate governance because corporate governance

23  needed to be established.

24         THE COURT:  Exactly.  Right.

25         MR. SCHWARTZ:  There is no expression or view on the

1  part of the debtors in possession, the managing member of the

2  debtors in possession that somehow by virtue of this District

3  Court order Mr. Marwil or any -- the Bayou Entities are immune

4  for cause, appointment under 1104.

5           THE COURT:  Right.

6           MR. SCHWARTZ:  We would acknowledge that Your Honor

7  certainly has that power.

8           The point was that by virtue of the criminal

9  activities there was no governance control over these entities.

10  The creditors, the investor creditors were defrauded out of

11  hundreds of millions of dollars.  They took it upon themselves

12  to seek to have a managing member appointed, nor merely

13  receivers, Your Honor.

14           THE COURT:  Right.

15           MR. SCHWARTZ:  And so -- and we appreciate that Your

16  Honor recognizes that distinction.

17           We just feel that it's -- that there's a continual

18  begging of the question and circular reasoning that there's

19  somehow an issue.  There are literally thousands of limited

20  liability companies that are debtors in possession in

21  bankruptcy courts across this country.  Each of them has a

22  managing member who signed the petition.

23           THE COURT:  Right.

24           MR. SCHWARTZ:  We happen to have a managing member

25  and ordinarily you might have a secretary of the LLC to certify

20

1    that this is the managing member.  We happen to have a District

2    Court order, which I think is better.  It's adjudicated.  He is

3    the managing member, so why he's -- he keeps being referred to

4    as merely receiver and therefore custodian and therefore not

5    the managing member of the debtor in possession when the court

6    order says he is something that we find -- it's hurting this

7    estate is what I'm trying to say.

8         Yesterday we received information from the FBI

9    enabling us to prepare another 40 adversary proceedings -- 60

10   adversary proceeding complaints putting into controversy for

11   the benefit of this estate in the aggregate another $50 million

12   of potential recoveries.

13        Receiving more papers in this and having to file

14   replies to make sure Your Honor and the record were current on

15   our view and, of course, consulting with our creditors

16   committee we completed and filed approximately 25 complaints

17   yesterday putting into controversy about $25 million.  We would

18   have filed them all yesterday.  Now we will file the rest of

19   them today, but that's what this case is about.

20        And I also want to make clear for the record just

21   that if a trustee is appointed and exclusivity automatically

22   terminates, what Your Honor witnessed with a -- and I don't

23   want to get into this in any detail, but there was a party

24   joining the Office of the United States Trustee in the motion,

25   an adversary proceeding defendant which didn't even allege

21

1   standing, didn't even allege being a creditor.

2        And if exclusivity is terminated, instead of spending

3   the next period collecting the estate as we should because

4   there is a -- there is a substantial undertaking here of

5   collecting not only the fictitious profits but also the

6   principle and we believe give -- under the law, and we're not

7   here to argue the law -- that law today, we'll argue it in the

8   adversary proceedings where it belongs, but we certainly don't

9   want a corporate control contest through competing plans of

10  reorganization and disclosure statements to damage these

11  creditors' prospects from receiving what would otherwise be

12  their optimal recovery in these cases.

13        So I just felt it's important on the record because

14  that's why we're here.  We're not here for any intellectual

15  exercises or control or whatever.  We're here to achieve the

16  maximum recoveries for all creditors of these estates.

17        THE COURT:  Right.

18        MR. SCHWARTZ:  So we thank Your Honor for your

19  ruling, but we just clearly wanted to acknowledge that if

20  there's any cause basis other than a district court order made

21  him, Mr. Marwil, the managing member as opposed to the more

22  normative process, if there's any basis other than that, we

23  would acknowledge that that's appropriate to be heard by you,

24  Your Honor.  Thank you.

25        THE COURT:  All right.  Mr. Bentley, do forgive me,

22

1    sir.  I didn't give you an opinion opportunity to be heard, but

2    let me say this.  I have read your piece on behalf of the

3    Garfinkels.  Your clients are one of the defendants I take it

4    in one of the adversary proceedings.  Is that correct?

5              MR. BENTLEY:  Correct, Your Honor.

6              THE COURT:  All right.  I express no view on any of

7    the matters that you've raised.  Mr. Schwartz is right.  The

8    issues that you have raised are issues to be dealt with in the

9    adversary proceedings as they maybe brought to the Court.  They

10   really don't bear on the question of whether or not I have the

11   power to make -- enter an order that would be in defiance of

12   Judge McMahon's order appointing Mr. Marwil.

13             MR. BENTLEY:  I --

14             THE COURT:  That's all.  I simply express no view

15   whatever on your -- on the position that you've asserted or the

16   positions.

17             I don't even express a view on what I've previously

18   written on the subject and whether or not it's applicable here.

19   I don't even remember what I wrote in that other opinion, so

20   all of that is tabula rasa, and we'll take it up at the

21   appropriate time.

22             MR. BENTLEY:  Understood, Your Honor.  And if I may

23   very briefly, the reason we put it in a pleading was not to

24   argue that that gave you power.  It was that in the event Your

25   Honor concluded you had the power then there would be an

23

1  exercise of discretion, and we thought the facts we were

2  raising went to the issue of --

3          THE COURT:  I understand.  Okay.  Well, I don't have

4  the power in my view.  And if I could imagine some way that I

5  do have this power to defy Judge McMahon's order, I think I

6  would probably exercise my discretion not to defy it, but

7  anyway, your positions for whatever they merit they may have

8  are simply not before me today.

9          MR. BENTLEY:  Understood, Your Honor.

10         THE COURT:  Okay.  Thank you, Mr. Bentley.

11         MR. SCHWARTZ:  One last point, Your Honor.  We would

12  be prepared to submit an order of whoever --

13         THE COURT:  Denying the motion.

14         MR. SCHWARTZ:  Yes, Your Honor.

15         THE COURT:  If you would do that.

16         MR. SCHWARTZ:  We will, Your Honor.

17         MS. AUSTIN:  Okay.  Perhaps we'll --

18         THE COURT:  Ms. Austin?

19         MS. AUSTIN:  Yes, I guess we'll find out when we see

20  the order, but I'm -- my understanding is this is being

21  dismissed for lack of jurisdiction.  I guess I'm trying to

22  understand this.

23         THE COURT:  I've tried to articulate.  I don't think

24  it's that I have lack of jurisdiction to decide the issue.

25         MS. AUSTIN:  Basically, it --

24

1          THE COURT:  I think that I do not have the power to

2    enter an order which would completely change and undermine the

3    order entered by Judge McMahon.  And if I did have the power to

4    do that, I wouldn't do it because I view Judge McMahon's order

5    as not as simply appointing a custodian or a receiver, but as

6    appointing the new management of these debtors, management

7    to -- which is expressly enjoined by Judge McMahon to act as

8    manager of debtor in possession with regard to each of these

9    entities.  It is not the role of a receiver -- it is not merely

10   the role of a custodian or a receiver.

11          We have new management and Mr. Marwil is the new

12   management.  That's basically my ruling.  You can simply refer

13   to the written record without attempting to rearticulate any of

14   the inarticulate things that I've said.

15          MS. AUSTIN:  Thank you, Your Honor, for the

16   clarification.

17          THE COURT:  All right.  Counsel for the creditors'

18   committee, do forgive me.  I didn't hear from you either.

19          MR. KIRBY:  Well, I would just simply state because

20   the Counsel at that time for the moving cred -- unofficial

21   creditors' committee, this order was prepared at the broadest

22   possible notice, and Judge McMahon directed us during the

23   course of the proceedings to renotice it to every person that

24   we could possibly know including this -- the United States --

25   United States Attorney's Office, the regulatory agencies that

25

1 had brought the proceedings, so this was done on the broadest

2 possible notice.

3       And I would simply say -- admit that having the

4 creditors having gone to the burden and expense of having done

5 this, it seems to us that if some other arm of the United

6 States believes that they need to be heard in these things they

7 have to take that up within their own laws.  We cannot do

8 anything more than provide the United States officials with

9 copies and notice and the United States was specifically asked

10 and they approved this order in its present form.  And so I'd

11 just like the record to reflect that.

12       THE COURT:  It's a point is well taken.

13       MS. AUSTIN:  Your Honor, I'd just note for the record

14 that the Office of the United States is a separate and distinct

15 office than, say, the Attorney General's Office, other arms of

16 the Department of Justice.

17       We are -- and that's for a purpose, because we are

18 the watch dog for the bankruptcy cases.  Imagine if we were

19 deemed to be the same as the Attorney General's Office, who

20 represents like the IRS in bankruptcies.  There would be a

21 conflict, so we are deemed to be very separate from that, and I

22 just say that for what it's worth.

23       THE COURT:  Well, you know, if you're going to take

24 this up with the District Court, you'd better at least be

25 prepared to argue that the District Court doesn't have the

26

1  power to put in place new management because that's essentially

2  what you're arguing here, it seems to me.

3          You haven't really argued that.  As I asked you at

4  the very first question, you haven't argued that there's any

5  infirmity, any legal infirmity of any sort in Judge McMahon's

6  order.  I don't think there is, but if there is, it's got to be

7  addressed either in the district court or the circuit court,

8  but not this court.  Thank you all very much.

9          MS. AUSTIN:  Thank you, Your Honor.

10          MR. SCHWARTZ:  Thank you, Your Honor.

11          THE COURT:  Good day.

12                        *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

27

1       I certify that the foregoing is a court transcript

2   from an electronic sound recording of the proceedings in the

3   above-entitled matter.

4

5                                    _____

6                                    Ruth Ann Hager

7   Dated:   June 30, 2006

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25