IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

In re BAYOU GROUP, et al., Debtors

---

On Appeal from the United States Bankruptcy Court
for the Southern District of New York

---

**BRIEF AND JOINDER FOR APPELLEE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

---

KASOWITZ BENSON TORRES & FRIEDMAN LLP
Joseph A. Gershman
Robert M. Novick
Scott H. Bernstein
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

PRESTON GATES ELLIS & ROUVELAS MEEDS LLP
Richard A. Kirby (*Pro Hac Vice*)
1735 New York Avenue NW, Suite 500
Washington, DC 20006-5221
Telephone: (202) 628-1700
Facsimile: (202) 331-1024

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .................................................................................... 1

II.  COUNTER-STATEMENT OF THE CASE .................................................................. 2

    A.   *The Unofficial On-Shore Creditors' Committee* ............................................. 2

    B.   *The Appointment of Jeff J. Marwil* ................................................................. 3

    C.   *Marwil's Post-Appointment Action and Creation of the Successor Official Creditors' Committee* ........................................................................................ 4

    D.   *The UST's Section 1104 Motion* ..................................................................... 5

III. ARGUMENT ................................................................................................................... 6

    A.   *The UST has not demonstrated that Marwil should be Removed "For Cause"* ............ 6

    B.   *The UST has not, and Cannot, Demonstrate that Removal of Marwil is in the Creditors' Best Interest* ...................................................................................... 7

    C.   *The UST's Argument Regarding Bankruptcy Policy is Neither Relevant nor Persuasive* ........................................................................................................ 8

IV.  CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

**STATUTES**

11 U.S.C. § 1101(1) ............................................................................................................. 8

11 U.S.C. § 1104(a) .......................................................................................................... 9,10

11 U.S.C. § 1104(2) ........................................................................................................... 11

I.  **PRELIMINARY STATEMENT**

The Official Unsecured Creditors' Committee (the "Committee") joins the Brief for Appellees-Debtors ("Debtors' Brief") in opposition to the United State Trustee for Region 2's (the "UST") appeal from the June 30, 2006 Order of the Bankruptcy Court denying the *United States' Trustee's Motion to Appoint a Chapter 11 Trustee* (the "Section 1104 Motion" or the "Motion"). In February 2006, after revelations that Bayou's ("Bayou" or the "Bayou Entities") prior management had perpetrated a massive fraud, a large group of creditors formed the Committee's predecessor, the Unofficial On-Shore Creditors' Committee of the Bayou Family of Companies (the "Unofficial Committee"), to represent the Bayou creditors' interests. The Unofficial Committee then launched a nationwide search to identify the most qualified and appropriate person to lead the Bayou Entities and seek to remedy the Bayou fraud.

On April 28, 2006, after broad notice to various third parties, all affected federal government entities, and all known creditors, this Court entered an Order appointing the Unofficial Committee's proposed manager, Jeff J. Marwil ("Marwil"), as the "**sole and exclusive managing member and representative of each of the Bayou Entities with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities**...." Docket No. 35, App. A, 4/28/06 Order at p. 5, ¶ 7 (emphasis added). This Order also expressly granted Marwil authority over all claims belonging to the Bayou Entities. Since his appointment, Marwil has taken precisely the action contemplated by the creditors—i.e., aggressively and expeditiously pursuing the Bayou Entities' primary asset—litigation claims against third parties. In fact, in the five months since his appointment Marwil has pursued an efficient and comprehensive strategy designed to identify and pursue claims for the benefit of the defrauded Bayou creditors.

1

The Committee opposes the UST's attempt to displace Marwil and appoint a chapter 11 trustee. The UST seeks to replace qualified incumbent management that the creditors selected—a person with extensive case knowledge and a strong working relationship with the Committee—with a yet-to-be named individual with no background in this matter. The UST seeks this relief based on obscure policy claims without foundation in the Bankruptcy Code and without regard to the potential chaos and expense such a ruling would cause. Reversing the Bankruptcy Court's Order will hinder, not benefit, the Bayou creditors. For these reasons, as well as those set forth in the Debtors' Brief, the Bankruptcy Court's Order should be affirmed.

## II.    COUNTER-STATEMENT OF THE CASE

### A.    *The Unofficial On-Shore Creditors' Committee.*

Shortly after discovery of the Bayou fraud, various Bayou investors began contacting each other to coordinate their efforts to protect their interests. Docket No. 40 at p. 4, ¶ 7. At the time, Bayou was in total disarray: Bayou principals Samuel Israel and Dan Marino had pleaded guilty to criminal securities and wire fraud charges, and had apparently abandoned all remaining Bayou assets to the government. No one was left to manage the Bayou Entities for the benefit of the Bayou creditors. The creditor group determined that to be effective and represent the creditors' interests, it must organize itself. The creditor group sent notice to all known Bayou investors of a February 7, 2006 meeting, the purpose of which was to form an unofficial committee. At the request of the forming creditors, the United States Attorney's Office sent notice of formation of the Unofficial Committee as part of its victims' rights notification to known Bayou creditors. At the initial meeting, the creditors formed the Unofficial Committee. The Unofficial Committee considered itself an association of creditors

which, through its by-laws, undertook to represent all Bayou creditors. More than 50 creditors, holding in excess of $130 million in claims, participated in the Unofficial Committee's deliberations. While the Unofficial Committee's voting membership included the eight largest creditors willing to serve, all known creditors were invited to participate in the Unofficial Committee's deliberations on an *ex officio* basis, and many did in fact do so. *Id.* at ¶¶ 7-8.

Ultimately, the Unofficial Committee concluded it was in the best interests of all Bayou creditors to replace existing management and to seek the appointment of a federal equity receiver/managing member to operate the Bayou Entities—entities that had been abandoned and left rudderless. The Committee then undertook a comprehensive process to identify and select an appropriate individual to serve in this role. *Id.* at ¶ 9.

**B.     *The Appointment of Jeff J. Marwil.***

After selection of Marwil as the receiver, the Unofficial Committee then filed a motion with this Court seeking Marwil's appointment as the managing member for the Bayou Entities. This motion invoked federal and state law rights of creditors in light of the Bayou principals' guilty pleas admitting to the massive fraud they had perpetrated. The Unofficial Committee proposed Marwil as its nominee as both an equity receiver for the Bayou Entities and to replace the principals as managing members of the several LLC's. The motion requested that the District Court provide Marwil the broadest possible authority to manage the Bayou Entities, including the ability to seek bankruptcy protection as necessary and administer the estates as debtors-in-possession:

> *Corporate Governance*: Pursuant to 28 U.S.C. § 959(b), [Marwil would] succeed to be the sole and exclusive managing member and representative of each of the **Bayou Entities with the sole and exclusive power and authority to manage and direct the business and**

3

> *financial affairs* of the Bayou Entities, including without limitation, the authority to petition for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Code"), for **any or all of the Bayou Entities and in connection therewith be and be deemed a debtor-in-possession for any or all of the Bayou Entities in proceedings under Chapter 11 of the Code**, and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

Docket No. 35, App. A at p. 5, ¶ 7E (italics in original; italics and bold added). Similarly, at the hearing on the Unofficial Committee's motion—a hearing that was attended by three separate representatives of the United States Government[1]—the Unofficial Committee again made evident its intent that Marwil may choose, as the Bayou manager, to place the Bayou Entities into bankruptcy. *See* Transcript of April 28, 2006 hearing on the Unofficial On-Shore Creditors' Committee's Motion to Appoint a Receiver at 31, *Unofficial Committee v. Bayou Group, LLC*, S.D.N.Y., Case No. 7:06-cv-02379-CM (emphasis added). None of those present at the hearing, including the three government agencies, voiced any opposition to the Unofficial Committee's appointment of Marwil nor its requested form of order. On April 28, 2006, this Court granted the Unofficial Committee's proposed Order and Marwil began operating as the manager of the Bayou Entities. Docket No. 35, App. A.

### C. Marwil's Post-Appointment Action and Creation of the Successor Official Creditors' Committee.

On May 30, 2006, after reviewing the condition of the Bayou Entities and conferring with the Unofficial Committee, Marwil determined that it was in the best interests of creditors to commence these chapter 11 cases. Consistent with the authority the District Court granted Marwil as the "sole and exclusive managing member and representative of each of the Bayou

---

[1] The April 18, 2006 hearing was attended by counsel from the United States Attorney's Office for the Southern District of New York (both the criminal and civil divisions),

Entities with sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities," Marwil became the manager of the debtors-in-possession for the Bayou Entities by operation of Section 1101(1).[2]

On June 9, 2006, at the creditor organizational meeting, the UST selected four of the largest Unofficial Committee members and one *ex officio* participant to serve on the Official Committee.[3] The Unofficial Committee subsequently dissolved itself. Shortly after the declaration of bankruptcy, Marwil filed a series of avoidance actions against previous Bayou investors which, prior to discovery of the fraud, had withdrawn invested funds from the Bayou Entities. As of the date this brief was filed, Marwil has instituted approximately 125 actions seeking the recovery of approximately $125 million in claims.

**D.    *The UST's Section 1104 Motion.***

On June 20, 2006, the UST filed the Section 1104 Motion in the Bankruptcy Court. The UST offered no evidentiary support for its Section 1104 Motion. Instead, as discussed in the Debtors' Brief, the UST's motion was premised on its contention that Section 1104, as a matter of law, precluded Marwil from continuing to act as the Bayou Entities' managing member after bankruptcy commenced. Eric and Dana Garfinkel ("Garkfinkels"), defendants in an avoidance action that Bayou commenced at Marwil's direction, supported the UST's

---

    the Securities and Exchange Commission, and the Commodities Future Trading Commission. Docket No. 39, App. B at p. 1.

[2] Unless otherwise stated, any references to "Section" or "Code" refers to the provisions of chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

[3] Of the five Committee members, four were voting members of the Unofficial Committee prior to its June 13, 2006 dissolution: Silver Creek, 6800 Capital Corp./Bermuda Fund, L.P., Regent University, and John H. Williams. The remaining Committee member, Woodland Family Partners, was one of a group of creditors representing nearly $21 million in claims who had participated as an active *ex officio* member of the Unofficial Committee. Docket No. 40 at pp. 4-5, ¶ 8.

Section 1104 Motion, questioning Marwil's standing to prosecute avoidance actions. The Garfinkels' statement, however, also questioned Marwil's judgment with respect to initiating litigation intended to benefit the Bayou creditors: "Most troubling is the undue haste the Receiver has shown in filing multiple fraudulent conveyance suits against Bayou investors...." Docket No. 41 at ¶ 4. In other words, Garfinkels' objection to Marwil was that he was pursuing a litigation strategy, which the Committee approved, that was contrary to their interests.

On June 29, 2006, the Bankruptcy Court considered, and denied, the UST's Motion. As discussed in more detail in the Debtors' Brief, the Bankruptcy Court's decision was premised on the fact that this Court had appointed Marwil not merely as a custodian, but the managing member of the Bayou Entities. *See, e.g.*, 6/29/06 Court Transcript.

### III.    ARGUMENT

The UST's assertion that the Bankruptcy Code compels appointment of a chapter 11 trustee has no basis in law and the UST below presented no evidence below justifying displacing Marwil for cause or because it is in the best interests of creditors. The Bankruptcy Court did not err in refusing to second-guess this Court's authority to appoint Marwil under applicable law, as new management of Bayou, with full authority to act as management of the Bayou Estates. The Bankruptcy Court's Order denying the UST's Section 1104 Motion should be affirmed.

  *A.    The UST has not demonstrated that Marwil should be Removed "For Cause."*

The Committee joins that part of the Debtors' Brief asserting that the UST failed to make a record that there is any basis for removing Marwil for cause pursuant Section 1104(a)(1). *See* Debtors' Brief at 10-16.

6

### B. The UST has not, and Cannot, Demonstrate that Removal of Marwil is in the Creditors' Best Interest.

The UST does not even attempt to demonstrate that removal of Marwil, the creditors' handpicked new management, is in the best interests of creditors as required by Section 1104(a)(2).[4] Indeed, the record establishes that replacing Marwil would be contrary to the creditors' interests.

The record supports the Committee's judgment, as fiduciaries for all creditors, that challenging Marwil's authority at this time will be detrimental to the creditor interests. Should a new person unfamiliar with the facts replace Marwil, he or she will need to spend substantial time learning the facts surrounding this case—a process that will be plodding and expensive. Marwil has been acting as the receiver for over five months, during which he has adopted a comprehensive and aggressive strategy intended to recover monies on the creditors' behalf. The creditors should not be forced—midstream in this litigation—to expend additional funds and resources at the whim of the UST.

Similarly, the UST's attempts to remove Marwil as management of the debtor-in-possession could place the litigation—which is the Bayou Estates' sole substantial asset—in jeopardy. Prior to Marwil's appointment, the creditors undertook substantial efforts to select a candidate and provide him with the authority to marshal Bayou's assets, including the Bayou litigation. *See* Docket No. 40 at pp. 3-4, ¶ 5; *see also* Docket No. 35, App. A. After

---

[4]      Section 1104 of the Bankruptcy Code provides, in relevant part:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest. . . and after notice and a hearing, the court shall order the appointment of a trustee . . . or if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate. . . .

11 U.S.C. § 1104(a).

the Bayou Entities filed for bankruptcy Marwil, consistent with his mandate from the creditors, engaged in an aggressive plan to recover assets on the Bayou creditors' behalf. Appointment of a trustee, more than five months after Marwil was appointed as Bayou managing member, and four months after he initiated Bayou's bankruptcy strategy would, at best, lead to delay and uncertainty; at worst, endanger a litigation strategy designed to benefit all creditors. The absence of any creditor support for the Section 1104 Motion establishes as much. The only party to support the Section 1104 Motion, the Garfinkels, are defendants in an avoidance action Marwil commenced, who allegedly redeemed their entire investment in Bayou before the Bayou fraud was revealed. *See* Docket No. 41. The Garfinkels' motive to displace Marwil is transparent. They can only hope that a chapter 11 trustee will somehow inhibit the prosecution of the case against them. Thus, the record below demonstrates the UST's requested relief is manifestly not in the creditors' best interest.

### C.    *The UST's Argument Regarding Bankruptcy Policy is Neither Relevant nor Persuasive.*

Unable to support its argument with legal authorities, the UST contends there are policy reasons supporting the appointment of a chapter 11 trustee. The UST argues, in essence, that if the Bankruptcy Court's ruling is upheld there could be future "races to the courthouse," in which different groups of defrauded creditors seek competing orders appointing alternative management. The UST's argument is without factual basis in this record. And, even if possible in some future case, that issue may be adequately addressed when the inappropriate relief is sought in the future. Furthermore, the best interest provision of Section 1104(a)(2) provides ample basis for future bankruptcy courts to address such circumstances.

In fact, the record in this case demonstrates creditor unity rather than dysfunction. The creditors here undertook the appointment of Marwil only after the predecessor managers were arrested and in federal custody—leaving the Bayou Entities without management for

8

more than seven months. At that time, the creditors took every effort to achieve the broadest possible creditor consensus on their choice of new management. There simply is no record in this case of competing slates of management advocated by a divided creditor group.

The UST's speculation that there might some day be parallel proceedings involving the appointment of a receiver is unpersuasive. There is the possibility of parallel proceedings, but there are ample procedural mechanisms (including Federal Rule of Civil Procedure 42), as well as the jurisprudence of stays, comity, abstention, and preclusion, to enable courts to address such concerns. Further, in the extremely unlikely event there could be multiple judicially appointed managers, the Bankruptcy Code allows bankruptcy courts to resolve any inconsistencies. It makes no sense to fashion a remedy in this case that works a hardship on creditors because of the possibility that some future court might have to make judgments about differing potential managers.

Finally, there is nothing either in the case law nor the statutes that precludes a court of competent jurisdiction from providing an individual like Marwil with broad powers, including the authority to run day-to-day operations, and the power to invoke the statutory rights of any person to petition for bankruptcy relief. *See* Debtors' Brief at 11-15; s*ee also* Unofficial On-Shore Creditors' Committee's Memorandum in Support of Its Motion to Appoint a Receiver at 19-20. Indeed these authorities provide an adequate legal foundation for this Court's action in following the wishes of the creditors in appointing Marwil as new management for Bayou in April 2006. The Court should not now re-write applicable legal authorities and reverse its judgment because of the highly speculative and unlikely scenarios posited by the UST.

## IV. CONCLUSION

For reasons stated above, and in the Debtors' Brief, this Court should affirm the Bankruptcy Court's Order denying the appointment of a chapter 11 trustee.

Dated: October 6, 2006

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: _____
Joseph A. Gershman (JG-8275)
Robert M. Novick (RN-4037)
Scott H. Bernstein (SB-8966)
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

-and-

PRESTON GATES ELLIS
& ROUVELAS MEEDS LLP
Richard A. Kirby (pro hac vice)
1735 New York Avenue NW
Suite 500
Washington, DC 20006
Telephone: (202) 661-3730
Facsimile: (202) 331-1024