# 06-CIV-6837 (CM) (MDF)
_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

### In re BAYOU GROUP, LLC, <u>et al.</u>, Debtors
_____

On Appeal from the United States Bankruptcy Court
for the Southern District of New York
(Bankr. Case No. 06-22306 (ASH))

_____

## BRIEF FOR APPELLEES-DEBTORS
## AND DEBTORS-IN-POSSESSION
_____

DECHERT LLP
H. Jeffrey Schwartz (HJS-4105)
Gary J. Mennitt (GM-1141)
Elise Scherr Frejka (ESF-6896)
Jonathan D. Perry (JP-0863)
30 Rockefeller Plaza
New York, New York  10112
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599

*Attorneys for the Appellees-Debtors and*
  *Debtors-in-Possession*

Dated: October 6, 2006

Oral Argument: November 17, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

ISSUE PRESENTED .................................................................................................. 1

STATEMENT OF THE CASE ...................................................................................... 2

A.    The Controlling Interests of the Bayou Entities Were Forfeited
      to the United States for the Collective Benefit of Defrauded Investors ............................2

B.    The Unofficial Creditors Committee Was Formed to Mitigate Massive
      Losses by Setting Up the Pursuit of Claims Against Third Parties .................................. 3

C.    The District Court Order Appoints Marwil as Managing Member
      of Each of the Bayou Entities, and Thus Fills the Managerial Vacancy .......................... 3

D.    Marwil Acts Pursuant to the District Court Order
      As Managing Member of Each of the Bayou Entities ....................................................... 5

E.    The Bankruptcy Court Denied the Section 1104 Motion Finding
      That the District Court Order Left no Vacancy for a Trustee to Fill................................6

SUMMARY OF THE ARGUMENT ............................................................................. 8

ARGUMENT ............................................................................................................. 10

A.    No "Cause" For Appointment of a Trustee Under Bankruptcy Code § 1104(a)(1) ..........12

      1.    The District Court Had the Power to Appoint Marwil
            As Managing Member of Each of the Bayou Entities ........................................12

      2.    The District Court Order Properly Appointed Marwil As Both
            Receiver and Managing Member of Each of the Bayou Entities...........................13

      3.    Marwil Has Managed the Debtors Effectively and Appropriately .......................14

      4.    Marwil's Continuing Service As Managing Member of the
            Debtors-in-Possession Post-Petition Is Consistent
            With the Bankruptcy Code..................................................................................15

B.    A Chapter 11 Trustee is Not in the Best Interests of Creditors
      Under Bankruptcy Code § 1104(a)(2) ..............................................................................23

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

In re Adelphia Communications Corp.,
    336 B.R. 610 (Bankr. S.D.N.Y. 2006),
    aff'd, 342 B.R. 122 (S.D.N.Y. 2006) ...................................................................11, 12

In re Coho Energy Inc.,
    395 F.3d 198, 201 (5th Cir. 2004) ......................................................................18

In re Dragone,
    266 B.R. 268 (D. Conn. 2001) ...........................................................................11

In re Fairwood Corp.,
    No. 99 Civ. 3177 (HB), 2000 WL 264319 (S.D.N.Y. Mar. 9, 2000),
    aff'd, 242 F.3d 364 (2d Cir. 2001) ....................................................................15

In re FSC Corp.,
    38 B.R. 346, 347, 350 (Bankr. W.D. Pa. 1983) ..................................................18

In re Gaslight Club, Inc.,
    782 F.2d 767, 776 (7th Cir. 1986) ......................................................................18

In re G-I Holdings, Inc.,
    385 F.3d 313 (3d Cir. 2004)...............................................................................11

In re Ionosphere Clubs, Inc.,
    113 B.R. 164 (Bankr. S.D.N.Y. 1990)................................................................11

In re Johns-Manville Corp.,
    801 F.2d 60 (2d Cir. 1986)..................................................................................13

In re LCL Income Properties, L.P. VI,
    177 B.R. 872 (Bankr. S.D. Ohio 1995)...............................................................13

Malhas v. Shinn,
    597 F.2d 28 (2d Cir. 1979)..................................................................................12

In re North Star Contracting Corp.,
    128 B.R. 66 (Bankr. S.D.N.Y. 1991)..............................................................11, 23

In re Plantation Inn Partners,
    142 B.R. 561 (Bankr. S.D. Ga. 1992).................................................................18

In re Property Co. of Am. Joint Venture,
    110 B.R. 244, 245-46 (Bankr. N.D. Tex. 1990) ..................................................18

In re Refco,
    05-60006 (RDD) (Bankr. S.D.N.Y. Jan. 10, 2006) ...............................................11, 16, 23

In re Royster Co.,
    145 B.R. 88 (Bankr. M.D.Fla. 1992) ...............................................................................23

In re Sletteland,
    260 B.R. 657 (Bankr. S.D.N.Y. 2001) .............................................................................16

In re Smart World Techs., LLC,
    423 F.3d 166 (2d Cir. 2005) ............................................................................................11

USA v. All Assets of Bayou Accredited Fund, LLC,
    05 CV 7722 (CM) (S.D.N.Y. Apr. 18, 2006) .....................................................................3

In re W.R. Grace & Co.,
    285 B.R. 148 (Bankr. D. Del. 2002) ................................................................................11

In re Westek Georgia, LLC,
    No. 03-55298 (RFH), 2004 WL 1092326 (Bankr. M.D. Ga. May 14, 2004)...................11

In re 400 Madison Ave., L.P.,
    213 B.R. 888 (Bankr. S.D.N.Y. 1997)............................................................................18

## **STATUTES**

11 U.S.C. § 101 .................................................................................................................4, 19

11 U.S.C. § 105 ................................................................................................................. 17-18

11 U.S.C. § 304 ........................................................................................................................2

11 U.S.C. § 322 ......................................................................................................................19

11 U.S.C. § 326 ......................................................................................................................20

11 U.S.C. § 330 ......................................................................................................................20

11 U.S.C. § 331 ......................................................................................................................20

11 U.S.C. § 345 ......................................................................................................................20

11 U.S.C. § 543 ...........................................................................................................7, 13, 17

11 U.S.C. § 1104 ..........................................................................1, 9-11, 12, 14-16, 19, 22

11 U.S.C. § 1106 ......................................................................................................21

11 U.S.C. § 1107 .................................................................................8, 15, 18, 21

11 U.S.C. § 1121 ........................................................................................9, 21, 24

28 U.S.C. § 754 ..........................................................................................................4

28 U.S.C. § 959 ..........................................................................................................4

Fed. R. Bankr. P. 9019 ...........................................................................................7

Fed. R. Bankr. P. 2002 .........................................................................................21

Fed. R. Civ. P. 66 ....................................................................................................4

### TREATISES

7 Collier on Bankruptcy ¶ 1104.02[2][a] ....................................................................11

7 Collier on Bankruptcy ¶ 1101.01[2] .......................................................................16

Appellees Bayou Group, LLC, Bayou Management, LLC, Bayou Advisors, LLC, Bayou Equities, LLC, Bayou Fund, LLC, Bayou Superfund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, and Bayou Accredited Fund, LLC (collectively, the "Debtors," the "Bayou Entities," or "Appellees"), by and through their counsel, Dechert LLP, respectfully request that this Court affirm the Order entered by Honorable Adlai S. Hardin, Jr., of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June 30, 2006, which denied the motion (the "Section 1104 Motion") of Appellant, the United States Trustee for Region 2 (the "United States Trustee" or "Appellant"), seeking the appointment of a Chapter 11 Trustee pursuant to section 1104(a) of title 11, United States Code (the "Bankruptcy Code").


## ISSUE PRESENTED

Did the Bankruptcy Court commit reversible error by denying the Section 1104 Motion seeking appointment of a trustee when (a) each of the Bayou Entities has a managing member duly appointed by this very Court, (b) the sole cause pled for appointment of a trustee was the Debtors' alleged lack of management, and (c) the Bankruptcy Code disfavors the appointment of a trustee and requires proof of cause by clear and convincing evidence?

## STATEMENT OF THE CASE

**A.    The Controlling Interests of the Bayou Entities Were Forfeited**
**to the United States For the Collective Benefit of Defrauded Investors**

The Debtors are an affiliated group of entities that created, operated, comprised, and controlled private pooled investment funds (commonly known as "hedge funds"). The Debtors came to operate these hedge funds as a fraudulent Ponzi scheme and engaged in a series of fraudulent actions and transactions in furtherance of this criminal scheme. Following the Bayou Entities' collapse in August 2005, numerous civil and criminal investigations were commenced by state and federal authorities. In particular, the United States Attorney for this District (the "U.S. Attorney"), the Securities and Exchange Commission (the "SEC"), and the Commodity Futures Trading Commission (the "CFTC") each commenced separate law enforcement actions against the Debtors and their principals – Samuel Israel III ("Israel") and Daniel Marino ("Marino") – alleging violations of numerous laws and regulations. On September 29, 2005, Israel and Marino pleaded guilty before this Court to conspiracy to commit fraud, mail and wire fraud, and investment advisor fraud.

In connection with the guilty pleas, the United States obtained broad forfeiture orders encompassing all property, interests, or assets that would otherwise be assets of the Bayou Entities (the "Forfeited Assets"), including the controlling interests of Israel and Marino in the Bayou Entities (the "Forfeited Controlling Interests").[1] The District Court appointed James P. Shinehouse of Kroll Talbot Hughes Inc. (the "Government Receiver") to assist the United States

---

[1]    The Bayou family of companies also consists of various off-shore hedge funds that are exempted limited companies organized and incorporated under the laws of the Cayman Islands (collectively, the "Off-Shore Funds"). The Off-Shore Funds were placed into liquidation under the laws of the Cayman Islands and Gordon I. MacRae and G. James Cleaver (the "Off-Shore Liquidators") were appointed Joint Official Liquidators of the Off-Shore Funds. The Off-Shore Liquidators, members of Kroll (Cayman) Ltd., commenced an ancillary proceeding under Bankruptcy Code § 304(b) in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division on September 9, 2005 and preliminary injunctions were thereafter entered.

Marshals Service in liquidating the Forfeited Assets.  In that regard, the U.S. Attorney affirmatively represented to this Court that the United States will not investigate or pursue civil claims against third parties related to the fraudulent investment scheme.  Transcript at p. 7, USA v. All Assets of Bayou Accredited Fund, LLC, 05 CV 7722 (CM) (S.D.N.Y. Apr. 18, 2006).

**B.    The Unofficial Creditors Committee was Formed to Mitigate Massive Losses by Setting up the Pursuit of Claims Against Third Parties**

In February 2006, following broad notice to creditors in the Debtors' on-shore hedge funds, more than sixty creditors of the Bayou Entities holding in excess of $130 million in claims (a majority of the allowable, undisputed, fixed, liquidated, unsecured claims in the Debtors' Chapter 11 cases) organized the Unofficial On-Shore Creditors Committee (the "Unofficial Creditors Committee").  The United States was understandably disinclined to force a bankruptcy filing to equalize distributions to defrauded investors.  Accordingly, the Unofficial Creditors Committee sought to mitigate its constituency's massive financial losses by obtaining an official, independent, disinterested fiduciary of the Bayou Entities who could initiate and maintain Chapter 11 cases to prosecute avoidance claims and other choses in action.

**C.    The District Court Order Appoints Marwil as Managing Member of Each of the Bayou Entities, and Thus Fills the Managerial Vacancy**

On March 27, 2006, the Unofficial Creditors Committee filed a civil action in the District Court seeking the appointment of Jeff J. Marwil ("Marwil") as a fiduciary of the Bayou Entities to marshal and prosecute avoidance power claims in favor of the defrauded creditors community so as to efficiently mitigate their massive losses.  Complaint, Unofficial On-Shore Creditors' Committee v. Bayou Group, LLC, 06-cv-2379, subsequently consolidated with In re Bayou, 06 MDL 1755; see Order of Consolidation entered April 21, 2006.  Broad notice of the case commencement, as well as the District Court Order, was provided to all known creditors of the

Bayou Entities, parties-in-interest therein, and the United States, the holder of the Forfeited Controlling Interests.[2]

This Court conducted hearings, at the request of the Unofficial Creditors Committee, on April 18, 2006 and April 28, 2006 to consider the appointment of Marwil as a qualified, appropriate control person for each of the Bayou Entities. The United States, holder of the Forfeited Controlling Interests, participated in these hearings and consented to the appointment.

Immediately following the April 28, 2006 hearing, this Court entered an order (the "District Court Order," D.E. 35, App. A) pursuant to 28 U.S.C. §§ 754 and 959, Federal Rule of Civil Procedure 66, and the Court's inherent authority, duly effecting the appointment of Marwil as managing member of each of the Bayou Entities through the following decretal paragraph:

> *Corporate Governance*: Pursuant to 28 U.S.C. § 959(b), [Marwil shall] succeed to be **the sole and exclusive managing member** and representative of each of the Bayou Entities with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities, including without limitation, the authority to petition for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Code"), for any or all of the Bayou Entities and **in connection therewith be and be deemed a debtor-in-possession for any or all of the Bayou Entities** in proceedings under Chapter 11 of the Code, and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

District Court Order (D.E. 35, App. A) ¶ 7(e) (emphasis added).

---

[2]    The United States appropriately received full notice of the action by the Unofficial Creditors Committee and, of its own initiative, actively participated in the finalization of the proposed District Court Order. The April 18th and 26th hearings were attended by, inter alia, the U.S. Attorney (both criminal and civil divisions), the SEC, and the CFTC, whom either consented or declined to object to the District Court Order.

**D.    Marwil Acts Pursuant to the District Court Order
As Managing Member of Each of the Bayou Entities**

Pursuant to the District Court Order of appointment, Marwil moved swiftly to fulfill his

duties as managing member of the Bayou Entities.  Marwil has devoted extensive time and effort

to meet his obligations and responsibilities imposed by the District Court Order by, among other

things, devising a litigation and business strategy, reviewing the financial and operational history

of the Bayou Entities, managing the Bayou Entities, and commencing the bankruptcy cases and

adversary proceedings.  Indeed, on May 30, 2006 (the "Petition Date"), each of the Debtors filed

with the Bankruptcy Court separate voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code, each signed by Marwil as "Sole Managing Member."[3]

Marwil's conduct as managing member of the Debtors has resulted in an appropriately

ambitious litigation strategy aimed at achieving maximum recovery for the benefit of all

creditors in an efficient, expeditious manner so as to mitigate their losses to the extent

practicable.  Since the Petition Date, the Debtors have commenced more than 125 adversary

proceedings seeking disgorgement from redeeming investors who lack "good faith" in

connection with such redemptions in the approximate amount of $125 million for pro rata

distribution to all innocent defrauded investors. Bankruptcy Judge Hardin has moved these

adversary proceedings forward with an appropriately ambitious scheduling order consistent with

the defendants' due process rights.  In that regard, his scheduling order contemplates expedited

preliminary discovery and a briefing schedule on pre-answer dispositive motions such that oral

---

[3]    On June 15, 2006, the United States Trustee appointed the Official Committee of Unsecured Creditors
(the "Official Creditors Committee") consisting of five members, four of whom were voting members
of the Unofficial Creditors Committee, which, as set forth above, obtained the District Court Order
appointing Marwil managing member of the Bayou Entities.  The Official Creditors Committee
opposed the Section 1104 Motion.

argument is set for January 24, 2007.  The Debtors and their professionals, as managed by

Marwil, continue to make every effort to meet Judge Hardin's schedule.

**E.      The Bankruptcy Court Denied the Section**
**1104 Motion Finding That the District Court**
**Order Left no Vacancy for a Trustee to Fill**

On June 20, 2006, the United States Trustee filed the Section 1104 Motion on the sole

ground that, as a matter of law, the Bayou Entities lacked a managing member.  See D.E. 29.

The Section 1104 Motion was opposed by the Official Creditors Committee, D.E. 39, and was

not supported by any creditor.  Eric and Diane Garfinkel, "complete redeemers" and defendants

in an adversary proceeding brought by the Bayou Entities to recover more than $2 million, were

the only parties to file a statement in support of the Section 1104 Motion. D.E. 41.

In denying the Section 1104 Motion, the Bankruptcy Court rightly found that it had

jurisdiction to consider the motion and to appoint a trustee for cause but that no such cause

existed.  Transcript of June 29, 2006 Hearing on Motion of the United States Trustee for the

Appointment of a Chapter 11 Trustee ("B. Ct. Tr.") (D.E. 49) at 16 ("I do have jurisdiction over

this proceeding"), 23 ("I don't think it's that I have a lack of jurisdiction to decide the issue.").

The Bankruptcy Court further found that it was "perfectly clear" that **the District Court**

**Order appointed Marwil as management of the Debtors**, not merely as a "receiver:"

> Well, let me tell you the fundamental problem that I have with your
> position here.  **Mr. Marwil is called a receiver, but Judge McMahon's**
> **order goes well beyond that.  And it is [] that aspect of Judge**
> **McMahon's order that I believe your motion ignores**.
>
> * * *

**. . . [T]he District Court order . . . made perfectly clear that Mr. Marwil is not just a receiver[.]  He is the managing member.  He is the person in charge.  He is management of each of these debtors given under Judge McMahon's order.**  The power to operate [] as debtor in possession [for] each of these entities and you're seeking to supplant Mr. Marwil, not just as a receiver, but as a person who has the authority given to him by Judge McMahon to operate as debtor in possession.  Not trustee. Debtor in possession.

\* \* \*

This is not a custodian.  Mr. Marwil is not simply a custodian.  He is not a custodian any more than had the District Court approved the appointment of a new board of directors, a new president, somebody with a title other than receiver.  In fact, I'm not sure – I haven't studied her order that carefully.  It's many pages long.  But I don't know how many times the word "receiver" appears, other than the title in the order.  **But the substance of the order is that Mr. Marwil is not simply a custodian. He is given the management of these entities.  He is the new board of directors, the new president, CEO, whatever title you want.  That's the nature of his responsibilities**.

And lest there be any doubt about it, the order that Judge McMahon signed states that "In connection therewith," namely his having the "sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities."  In connection with that it says, ". . . and in connection therewith be and be deemed a debtor in possession for any or all of the Bayou Entities in proceedings under Chapter 11 of the Code . . . ."  So this –**we're not dealing with a custodian or receiver. Section 543 has no application**.

B. Ct. Tr. (D.E. 49) at 6-9 (emphasis added).

The Bankruptcy Court denied Appellant's Section 1104 Motion, holding that:

I do not think I have the power to enter an order which would completely change and undermine the order entered by Judge McMahon.  And if I did have the power to do that, I wouldn't do it because I view Judge McMahon's order as not simply appointing a custodian or a receiver, but as appointing new management of these debtors, management [] which is expressly enjoined by Judge McMahon to act as manager of the debtor in possession with regard to each of these entities. . . .  **We have new management and Mr. Marwil is the new management.  That's basically my ruling**.

B. Ct. Tr. (D.E. 49) at 24 (emphasis added).

7

## SUMMARY OF THE ARGUMENT

On April 28, 2006, in an action commenced by, and on the motion of, the majority in amount of the Bayou Entities' creditors, this Court entered the District Court Order appointing Marwil to "**succeed as the sole and exclusive managing member and representative of each of the Bayou Entities with the sole and exclusive power and authority to manage and direct the business and affairs of the Bayou Entities . . . .**" District Court Order (D.E. 35, App. A) ¶ 7(e) (emphasis added). The District Court Order also expressly contemplated a bankruptcy filing and that the Bayou Entities would continue in possession post-petition under the direction of Marwil. D.E. 35, App. A at ¶ 7(e). Appellant does not and cannot contest that the District Court had the authority to appoint Marwil as managing member of the Bayou Entities. See App. Br. at 21 ("The District Court order was entirely proper up to the moment Bayou went into Bankruptcy.").

Appellant ignores the plain terms of the District Court Order, principals of corporate governance, and the presumption of uninterrupted management for a debtor-in-possession under the Bankruptcy Code, and instead sets up the "strawman" that this Court appointed Marwil solely as a receiver who would be displaced upon a bankruptcy filing. As the Bankruptcy Court found below, however, it is "perfectly clear" that, pursuant to the District Court Order, "Marwil is not just a receiver," but is "management of these debtors," with the "power to operate as debtor-in-possession" for each of the Bayou Entities. B. Ct. Tr. (D.E. 49) at 8.

As recognized by the Bankruptcy Court, the District Court Order is not only squarely within the District Court's authority, it is entirely consistent with the Bankruptcy Code. As the managing member of the Bayou Entities in these bankruptcy cases, Marwil stands in the identical position as management of any debtor-in-possession, with all of the rights afforded to, and obligations imposed on, a debtor-in-possession under Section 1107 of the Bankruptcy Code.

It is undisputed that Marwil has promptly and effectively exercised those duties as managing member:  within one month of his appointment, the Bayou Entities retained bankruptcy and litigation counsel, filed the contemplated bankruptcy cases, and launched an appropriately targeted litigation strategy aimed at maximizing and equalizing distributions to all creditors with all deliberate speed.  To date, the Debtors, at Marwil's direction, have commenced more than 125 adversary proceedings against redeeming former investors who collectively were paid in excess of $125 million by the insolvent Bayou Entities in furtherance of the Bayou Entities' fraud.

As determined by the Bankruptcy Court, Appellant offers no lawful justification for displacing Marwil's effective management of the Bayou Entities.  Under Section 1104 of the Bankruptcy Code, the appointment of a chapter 11 trustee is an extraordinary remedy requiring clear and convincing evidence of the necessity therefor – profound relief unjustified by eliding the District Court's express appointment of Marwil as managing member of the Bayou Entities.  Appellant fails to identify any harm that would occur in these bankruptcy proceedings were Marwil permitted to continue in his role as managing member, and likewise fails to identify a single innocent creditor that the appointment of a trustee would benefit.

Rather, as recognized by the Bankruptcy Court, the appointment of a trustee at this stage of the bankruptcy and adversary proceedings would substantially prejudice the Debtors' creditors.  Currently, the Debtors are fully engaged in the prosecution of more than 125 adversary proceedings and the investigation of additional potential claims.  The appointment of a trustee to displace Marwil likely would significantly delay these proceedings, undermine the momentum and authority the Debtors' counsel has developed so far, and unnecessarily increase litigation costs.  It would also terminate the Debtors' plan exclusivity pursuant to Section 1121 of

the Bankruptcy Code, thereby allowing opportunistic parties, including those advancing the

interests of the adversary proceeding defendants, to file competing proposed plans of

reorganization and disclosure statements, and  launch a two-front war of attrition that would

further undermine Debtors' ability to mitigate creditor losses.  Accordingly, it is essential to the

preservation of these estates that this Court affirm the Bankruptcy Court's Order denying the

Section 1104 Motion.

<u>**ARGUMENT**</u>

**THE BANKRUPTCY COURT'S ORDER DENYING THE
<u>SECTION 1104 MOTION SHOULD BE AFFIRMED</u>**

Although the Section 1104 Motion was nominally brought pursuant to Section 1104(a) of

the Bankruptcy Code, Appellant's brief ignores the statutory standard governing the appointment

of a trustee pursuant to that provision.  Section 1104(a) of the Bankruptcy Code provides, in

relevant part and with emphases added:

> (a)    At any time after the commencement of the case but before
> confirmation of a plan, on request of a party in interest or
> the United States trustee, and after notice and a hearing, the
> court shall order the appointment of a trustee –
>
> (1)    **for cause, including fraud, dishonesty,
> incompetence, or gross mismanagement of the
> affairs of the debtor by current management**,
> either before or after commencement of the case, or
> **similar cause**, but not including the number of
> holders of securities of the debtor or the amount of
> assets or liabilities of the debtor;
>
> (2)    if such appointment is in the **interests of creditors**,
> any equity security holders, and other interests of
> the estate, without regard to the number of holders
> of securities of the debtor or the amount of assets or
> liabilities of the debtor;
>
> * * *

As the Second Circuit has noted, "the standard for § 1104 appointment is very high." In re Smart World Techs., LLC, 423 F.3d 166, 176 (2d Cir. 2005) (dicta); see Transcript of Hearing Before the Honorable Robert D. Drain, U.S.B.J. at 121, In re Refco, Inc., 05-60006 (RDD) (Bankr. S.D.N.Y. Jan. 10, 2006) (denying United States Trustee's motion to appoint trustee pursuant to § 1104(a)(2)) (relevant excerpts in record at D.E. 35 App. B).

The appointment of a Chapter 11 trustee is an "extraordinary remedy" and "the exception, rather than the rule." In re Adelphia Communications Corp., 336 B.R. 610, 655, 658 (Bankr. S.D.N.Y. 2006) (denying motion to appoint trustee), aff'd, 342 B.R. 122 (S.D.N.Y. 2006); see also In re North Star Contracting Corp., 128 B.R. 66, 70 (Bankr. S.D.N.Y. 1991) (denying appointment of trustee); In re Dragone, 266 B.R. 268, 271 (D. Conn. 2001) (affirming denial of motion for trustee); In re W.R. Grace & Co., 285 B.R. 148, 158, 160 (Bankr. D. Del. 2002) (denying motion to appoint trustee, recognizing that "appointing a trustee must be considered a last resort"); 7 Collier on Bankruptcy ¶ 1104.02[2][a] (trustee appointed pursuant to § 1104 only in "extraordinary cases").

The United States Trustee has the burden of showing by "clear and convincing evidence" that the appointment of a trustee is warranted. In re Adelphia, 336 B.R. at 656; In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990); see also, e.g., In re G-I Holdings, Inc., 385 F.3d 313, 318-19 (3d Cir. 2004); In re Westek Georgia, LLC, No. 03-55298 (RFH), 2004 WL 1092326, at *1 (Bankr. M.D. Ga. May 14, 2004) ("Most courts hold that the showing" that appointment of a Chapter 11 trustee is warranted "must be by clear and convincing evidence.") (collecting cases).

A.    **No "Cause" For Appointment of a Trustee**
      **Under Section 1104(a)(1) of the Bankruptcy Code**

Appellant does not and cannot offer "clear and convincing evidence" of "cause" for the appointment of a trustee in these bankruptcy cases.  Under section 1104(a) of the Bankruptcy Code, the "cause" alleged by Appellant must be related to Marwil's actions as managing member and not directed at the non-bankruptcy appointment process of corporate management.  In re Adelphia Communications Corp., 342 B.R. 122, 128 (S.D.N.Y. 2006) (holding that section 1104(a)(1) of the Bankruptcy Code "requires a showing of fraud, dishonesty, incompetence, gross mismanagement, or similar misconduct by the debtor-in-possession").  Here, however, Appellant does not even assert that current Court-appointed management has engaged in anything other than laudatory stewardship of these cases and entities.

      1.    The District Court Had the Power to Appoint Marwil
            As Managing Member of Each of the Bayou Entities

Appellant does not question the validity of the pre-petition District Court Order appointing Marwil as managing member of the Bayou Entities.  In its Brief, Appellant concedes that "the District Court order was entirely appropriate up to the moment Bayou went into Bankruptcy."  App. Br. at 21.  In the Bankruptcy Court below, Appellant also conceded that the District Court Order was "lawful, proper and enforceable."  B. Ct. Tr. (D.E. 49) at 5.

Indeed, there can be no dispute that this Court had the power to appoint Marwil as managing member of the Bayou Entities.  See 28 U.S.C. § 959(b) ("[A] trustee, receiver, or **manager** appointed in any cause pending in any court in the United States, including a debtor-in-possession, shall manage and operate the property in his possession.") (emphasis added); Malhas v. Shinn, 597 F.2d 28, 31 (2d Cir. 1979) (affirming where the district court had "undertaken the unusual task of providing proper management" for an entity where existing management was

removed for fraud and an interim board of directors was installed by the court at the request of the SEC); <u>see also</u> <u>In re Johns-Manville Corp.</u>, 801 F.2d 60 (2d Cir. 1986)

Simply put, the Section 1104 Motion cannot survive the plain language of the District Court Order, which expressly appointed Marwil as the "**sole and exclusive managing member**" of the Bayou Entities, and contemplated "**proceedings under Chapter 11 of the Code**," with Marwil to have full authority to "**prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.**"  District Court Order (D.E. 35, App. A) ¶ 7 (emphasis added).  As the Bankruptcy Court found, it is "perfectly clear" that these provisions of the District Court Order rendered Marwil not merely a receiver, but as pre-bankruptcy management of the Bayou Entities with the authority to operate the Bayou Entities as debtors-in-possession.  B. Ct. Tr. (D.E. 49) at 8.

2. The District Court Order Properly Appointed Marwil As Both Receiver and Managing Member of Each of the Bayou Entities

This Court properly appointed Marwil concurrently as a receiver and as managing member of the prospective debtors-in-possession; a receiver may co-exist alongside a debtor-in-possession.  <u>See</u> <u>In re LCL Income Properties, L.P. VI</u>, 177 B.R. 872, 876 (Bankr. S.D. Ohio 1995) (declining to remove receiver with custody of property in a single asset real estate case, reasoning that the debtor-in-possession "will have the opportunity to reorganize [as] contemplated by the bankruptcy laws, and at the same time the interests of creditors will be protected").  Such distinct legal capacities may repose concurrently in a single individual, and there is no legal authority narrowing this Court's remedial discretion or power.

Upon filing for bankruptcy, section 543 of the Bankruptcy Code requires a receiver to either turn over property of the debtors or be excused from compliance.  Thus, the bankruptcy filings terminated Marwil's role as receiver, but he remains managing member.

3.    <u>Marwil Has Managed the Debtors Effectively and Appropriately</u>

Appellant does not and cannot allege that current management of the debtor-in-possession – Marwil – has engaged in any of the misconduct enumerated in Section 1104(a)(1) as "cause" for appointing a trustee.  Appellant does not dispute that Marwil is a highly qualified, disinterested, and effective manager of the debtors-in-possession, and is uniquely qualified, by both his expertise and his extensive work in these matters, to maximize the value of the Debtors' estates for the benefit of the majority of the Debtors' creditors and other parties-in-interest.[4] Indeed, it was the Unofficial Creditors Committee who sought and obtained Marwil's appointment based upon his outstanding credentials.[5]

Marwil, since his appointment, has acted and continues to act in his capacity as the managing member of the Bayou Entities.  The adversary proceedings commenced in the Bankruptcy Court were filed by the Debtors, as debtors-in-possession, at the direction of Marwil as their managing member.  Accordingly, given the undisputed authority and independence of Marwil, the lack of any conflict whatsoever in performance of his fiduciary duties on behalf of

---

[4]   Appellant argues that "[b]ecause the debtor-in-possession's managers are convicted felons who cannot be trusted to fulfill the responsibilities of a debtor-in-possession, the bankruptcy court erred in not ordering the appointment of a federal bankruptcy trustee under 11 U.S.C. § 1104(a)."  App. Br. at 21.  This statement once again ignores the fact that Marwil, not Israel or Marino, is currently the manager of the debtors-in-possession.  Naturally, Section 1104(a)(1) requires a showing of fraud, etc. by "**current** management."  It is undisputed that Marwil can be trusted to fulfill the responsibilities of a debtor-in-possession, and indeed already has.  That Debtors' former managers are convicted criminals is irrelevant to the analysis at this point.

[5]   Marwil, a partner in the Chicago office of Jenner & Block, LLP and a member of the Bankruptcy, Workout and Corporate Reorganization Practice, has significant complex corporate Chapter 11 case experience having practiced in that area for over twenty years representing Chapter 11 debtors, secured and unsecured creditors, and purchasers of distressed assets.  In addition, in July 2002, the SEC selected Marwil to act as Conservator, and ultimately Receiver, of the Church Extension of the Church of God, United Management Services, and their respective subsidiaries ("CEG").  As such, Marwil had operational and financial oversight of CEG's wide range of businesses and financial investments and was charged with the duty to recover more than $85 million to repay defrauded noteholder investors.

the Debtors, the Official Creditors Committee's unwavering support of Marwil, and the Official

Creditors Committee's insistence that a trustee not be appointed, no basis existed in law or fact,

let alone "clear and convincing evidence," to grant the Section 1104 Motion.

    4.    Marwil's Continuing Service as Managing Member of the
               Debtors-in-Possession Is Consistent With the Bankruptcy Code

Appellant's contention that, once the Debtors filed their bankruptcy petitions, the

Bankruptcy Code in some manner superseded the District Court Order and terminated Marwil's

authority as managing member has no legal basis.  Pursuant to the District Court Order, Marwil

stands in the same position as the managing member of any limited liability company, or for that

matter any corporate or partnership fiduciary, in bankruptcy, with all of the rights and obligations

of a debtor-in-possession.  See 11 U.S.C. § 1107 ("a debtor in possession shall have all the

rights, other than the right to compensation under section 330 of this title, and powers, and shall

perform all the functions and duties, except the duties specified in section 1106(a)(2),(3), and (4)

of this title, of a trustee serving in a case under this chapter").

As with management of any debtor-in-possession, Marwil's continued service as sole

managing member of each of the Bayou Entities post-petition is entirely consistent with the

Bankruptcy Code.  Under the Bankruptcy Code, pre-petition, non-bankruptcy corporate

governance decisions are presumed to remain intact.

As provided in Sections 1104 and 1107, the Bankruptcy Code specifically contemplates

and indeed presumes that existing management of a debtor will remain in possession during

bankruptcy proceedings.  "[I]t is presumed that a Chapter 11 debtor will remain in possession

and control of its assets during the pendency of a bankruptcy proceeding," and therefore "courts

will grant relief under § 1104(a) only in extraordinary cases."  In re Fairwood Corp., No. 99 Civ

3177 (HB), 2000 WL 264319, at *2 (S.D.N.Y. Mar. 9, 2000) (affirming bankruptcy court's

denial of motion to appoint trustee), aff'd, 242 F.3d 364 (2d Cir. 2001); see also In re Sletteland,

260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) (denying motion to appoint trustee given the "strong

presumption that the debtor should be permitted to remain in possession in a Chapter 11 case"); 7

Collier on Bankruptcy ¶ 1101.01[2] ("Upon the commencement of a chapter 11 case, the debtor

automatically becomes a debtor in possession. . . . Trustees are the exceptions rather than the

rule, and in most chapter 11 cases the debtor serves as a debtor in possession for the duration of

the case").

Section 1104's strong presumption in favor of continuing debtors as debtors-in-

possession was recently applied in In re Refco, Inc., 05-60006 (RDD) (Bankr. S.D.N.Y. Jan. 10,

2006) (relevant excerpts attached in the record at D.E. 35 App. B), in which Judge Drain rejected

a similar motion to appoint a trustee brought by the United States Trustee.  In Refco, the board of

directors that presided over the debtors during a massive fraud by the chief executive officer

remained intact and in control of Refco postpetition.  The Refco board had obvious inherent

conflicts in acting as a fiduciary to investigate and pursue causes of action related to and

stemming from the fraud.  The Refco board, however, with the consent of the creditors

committee, appointed a chief executive (the "CEO") with no connection to the fraud.  Thereafter,

the United States Trustee filed a motion for the appointment of a trustee.  The official Refco

creditors committee objected, arguing that the new, untainted CEO was in control of the debtors-

in-possession and no trustee was necessary.  Judge Drain conditionally declined to appoint a

trustee so long as the existing tainted Refco board resigned.  In so holding, the Refco court found

virtually dispositive that the creditor constituency was opposed to the appointment of a trustee

and that the practical combined effect of an untainted CEO and the resignation of the tainted

board resolved the concerns raised by the United States Trustee.

Here, displacement of Debtors' current management, who is completely untainted, is even more unwarranted than in <u>Refco</u>. Marwil was appointed as managing member not by a tainted board of directors post-petition, but rather pursuant to the District Court Order, on motion by the Unofficial Creditors Committee, prior to the bankruptcy filings to replace the wrongdoers and to seamlessly direct the Debtors both pre-petition and post-petition. Marwil has utterly no connection to the fraud and has acted properly as a fiduciary to investigate vigorously and pursue claims arising from the fraud. No question exists here that Debtors' creditor constituency, represented primarily by the Official Creditors Committee, fully supports Marwil's continued service as managing member of the debtors-in-possession and opposes the Section 1104 Motion. It is even clearer here than in <u>Refco</u>, therefore, that the appointment of a trustee is profoundly unnecessary and unwarranted.

Neither any provision of the Bankruptcy Code nor any other legal authority bars Marwil from continuing to manage the Debtors post-petition. As manager of the debtors-in-possession, Marwil is not a "custodian" under the Bankruptcy Code, and Section 543 of the Bankruptcy Code therefore is not even implicated.[6] Section 105(b) of the Bankruptcy Code also is inapplicable because it does not address the authority of a court to appoint a manager **pre-**

---

[6]    Even if Section 543 applied, it would not provide grounds for the appointment of a trustee for two reasons. First, the requirements of Section 543 have been satisfied: between his appointment on April 28, 2006 and the filing of bankruptcy petitions on May 30, 2006, Marwil, as federal equity receiver or otherwise, did not take possession of any property. <u>See</u> Notice of Compliance with Bankruptcy Code § 543 filed on June 13, 2006. D.E. 24. Nonetheless, in compliance with Section 543, on the Petition Date and simultaneously with the commencement of the Debtors' cases, Marwil delivered and was deemed to have delivered to the Debtors any and all property held by him. <u>Id</u>. Second, Section 543(d) expressly authorizes the Bankruptcy Court to "excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors . . . would be better served by permitting a custodian to continue in possession, custody, or control of such property." Here, as outlined in Section I.B, <u>infra</u>, it is clearly in the interests of the Debtors' innocent investor creditors for Marwil to continue "in possession, custody, or control" of the Debtors' estates, including, most importantly, the Debtors' fraudulent conveyance claims. Appellant, to the contrary, fails to identify a single way in which the appointment of a trustee would benefit these creditors.

**petition**.  Lastly, both cases Appellant cites in support of this proposition are misplaced because they involved pre-petition "receivers" appointed for a limited purpose, not managers expressly authorized by order of a district court to operate the entities as debtors-in-possession.  See In re 400 Madison Ave. L.P., 213 B.R. 888 (Bankr. S.D.N.Y. 1997); In re Plantation Inn Partners, 142 B.R. 561 (Bankr. S.D. Ga. 1992).[7]

Appellant's argument that the District Court Order establishes duties for Marwil that differ from those required of a trustee under the Bankruptcy Court misleads because the differences so identified would exist for management of any debtor-in-possession.  The Bankruptcy Code imposes limitations on a trustee's compensation and imposes certain duties on a trustee that do not apply to managers of any debtor-in-possession.  Thus, any differences between the duties imposed on a trustee and those imposed on Marwil, as manager of a debtor-in-possession, arise from the Bankruptcy Code itself, not from the District Court Order.  By definition, the terms of the District Court Order are consistent with the duties of a debtor-in-possession under Section 1107 of the Bankruptcy Code because the District Court Order simply

---

[7]      Indeed, several bankruptcy courts have even appointed management of debtors-in-possession post-petition pursuant to sections 105(a) and 1107 of the Bankruptcy Code, rather than appointing a trustee pursuant to section 1104, thereby belying the notion that the District Court Order, which appointed Marwil **pre-petition** somehow circumvented the Bankruptcy Code.  See In re Gaslight Club, Inc., 782 F.2d 767, 776 (7th Cir. 1986) (affirming court appointment of corporate officier); In re Property Co. of Am. Joint Venture, 110 B.R. 244, 245-46 (Bankr. N.D. Tex. 1990) (noting that bankruptcy court had "invoked 11 U.S.C. § 1107" to appoint "consultant [to] serve as interim Chief Executive Officer," "rather than ordering the appointment of a Trustee or Examiner by the United States Trustee"); In re FSC Corp., 38 B.R. 346, 347, 350 (Bankr. W.D. Pa. 1983) (holding that its appointment of "Responsible Officer" of debtor-in-possession, with authority to "perform the duties of the Debtor-in-Possession under the Code," is "contemplated by § 1107(a) of the Bankruptcy Code"); see also In re Coho Energy Inc., 395 F.3d 198, 201 (5th Cir. 2004) ("[u]pon confirmation of [Debtor's] Chapter 11 Plan of Reorganization, the bankruptcy court appointed a new CEO and President"); 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

equipped the Debtors with the honest, competent management that they were previously lacking and has enabled the Debtors, acting under such appointed fiduciary, to file for bankruptcy protection and operate as a debtor-in-possession.

In particular, the following chart demonstrates that the provisions of the District Court Order that Appellant claims conflict with the Bankruptcy Code are perfectly consistent with, and even contemplated by, the Bankruptcy Code. The first two columns of the chart below reproduce the substance of the chart Appellant sets forth in its Brief at page 16, while the third column explains why Appellant's objection is misplaced and how the particular provision of the District Court Order is consistent with the Bankruptcy Code.

| Duties of a Trustee Under the Bankruptcy Code | Appellant's Objection to the District Court Order | District Court Order is Consistent With Bankruptcy Code |
|---|---|---|
| Must be disinterested. 11 U.S.C. § 1104(b)(1), (d); 11 U.S.C. § 101(14) | Does not require disinterest | **If management of a debtor-in-possession is improperly beholden to interests other than those of creditors, the U.S. Trustee may move to appoint a trustee under 11 U.S.C. § 1104(a). Here, however, Appellant does not dispute that Marwil is in fact disinterested.**<br><br>**Moreover, an officer/director of every debtor-in-possession is considered an "insider" by definition, and therefore is not disinterested. 11 U.S.C. §101(31)** |
| Trustee must post a surety bond. 11 U.S.C. 322(a) | Does not require a bond absent a hearing. District Court Order ¶ 21. Bayou Receiver is indemnified. District Court Order ¶ 19 | **The Bankruptcy Code never requires management of debtors-in-possession to post a surety bond.** |

| Duties of a Trustee Under the Bankruptcy Code | Appellant's Objection to the District Court Order | District Court Order is Consistent With Bankruptcy Code |
|---|---|---|
| Defers compensation until trustee makes disbursements to creditors and court approves compensation.  11 U.S.C. §§ 326(a), 331. | Compensation is monthly. District Court Order ¶ 9 | **The Bankruptcy Code never per se fixes the compensation of management of debtors-in-possession, and does not interfere with pre-petition, non-bankruptcy corporate governance decisions.**<br><br>**Here, as with debtors-in-possession in general, Marwil's compensation was established by the market, was negotiated between Marwil and creditor constituency, and was approved by this Court.** |
| Compensation subject to a statutory cap and must be reasonable.  11 U.S.C. §§ 326(a), 330(a)(1)(A) | Compensation is the "greater of" $20,000 per month or two percent of the net amount of funds distributed.  District Court Order ¶ 9 | **Appellant's factual assumption is irrelevant and false:  Marwil's compensation under the Appointing Order is actually <u>lower</u> than trustee compensation.  <u>Compare</u> 11 U.S.C. § 326(a) (limiting trustee compensation to 5% of first $1 million returned to estate and 3% of money in excess of $1 million) <u>with</u> District Court Order ¶ 9 (paying Marwil 2% of money returned to estate).**<br><br>**Regardless, the Bankruptcy Code never fixes the compensation of management of debtors-in-possession, and does not interfere with pre-petition, non-bankruptcy corporate governance decisions absent extraordinary circumstances not present here.** |
| Trustee must undergo a background check.  U.S. Trustee Requirement | Not required | **The Bankruptcy Code never requires management of debtors-in-possession to qualify as such.** |
| Investments must be "insured or guaranteed by the United States" or subject to a bankruptcy court order authorizing an exception.  11 U.S.C. § 345 | Not required | **The District Court Order does not supplant the Bankruptcy Code:  The Bayou Entities, at the direction of Marwil as sole managing member, like all debtors-in-possession, must comply with the investment requirements of 11 U.S.C. § 345.** |

| Duties of a Trustee Under the Bankruptcy Code | Appellant's Objection to the District Court Order | District Court Order is Consistent With Bankruptcy Code |
|---|---|---|
| Settles cases subject to Court approval on notice to creditors. Fed. R. Bankr. P. 9019 | Settles cases after conferring with the unofficial committee. District Court Order ¶ 7(d) | **The District Court Order does not supplant the Bankruptcy Code or Bankruptcy Rules: The Bayou Entities, at the direction of Marwil as sole managing member, like all debtors-in-possession, must comply with Fed. R. Bankr. P. 9019 and 2002.** |
| Requires broad investigation of debtor and filing of public report of investigation with the Court. 11 U.S.C. § 1106(a)(3)-(4) | Requires limited investigation of claims of the Bayou Entities. Confidential report to be provided only unofficial committee. District Court Order ¶ 7(b). Confidential report to be provided to only the unofficial committee. District Court Order ¶ 7(b). | **In compliance with the Bankruptcy Code, at the direction of Marwil as sole managing member, the debtors-in-possession have undertaken and are continuing to undertake a broad investigation of their potential claims, resulting in the commencement to date of more than 125 adversary proceedings. Appellant has not identified a single potential claim that the Bayou Entities may have, but have not pursued.**<br><br>**Moreover, the Official Creditors Committee acts as statutory watchdog and may move the Bankruptcy Court for authority to investigate if the Bayou Entities fail to do so.** |
| Reporting contemplates recommendation whether or not to file a plan or to convert the bankruptcy case to chapter 7. 11 U.S.C. § 1106(a)(5) | Marwil files a liquidation plan "[u]nless a case is filed under the Bankruptcy Code." District Court Order ¶ 7(h). | **The District Court Order does not supplant the Bankruptcy Code: The Bayou Entities, as directed by Marwil must meet its obligations as debtors-in-possession under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1107(a), 1106(a)(5)** |
| Upon the appointment of a trustee, any party in interest may file a chapter 11 plan of reorganization. 11 U.S.C. § 1121 (c)(1). | Marwil has exclusive right to file a plan unless bankruptcy case is filed. District Court Order ¶ 7(h).: Because Marwil purports to be the debtor in possession, Marwil now claims exclusive right to file a chapter 11 plan. | **The Bayou Entities, as directed by Marwil as the sole managing member, like all debtors-in-possession, have the exclusive right to file a plan of reorganization. 11 U.S.C. § 1121 (c)(1).** |

Appellant also hypothesizes a parade of horribles that could somehow result in other, as-yet-unfiled cases if the Bankruptcy Court's Order is affirmed, App. Br. at 13, yet is unable to

identify any actual or potential harm that would be incurred in this case if Marwil continues as managing member of the debtors-in-possession pursuant to the District Court Order. Appellant may have purported concerns about the qualifications, interests, and constituencies of those appointed as management of other entities in future cases, and would indeed possess a remedy under Bankruptcy Code Section 1104 in those future cases if there is a dereliction of duty by appointed management. However, Appellant does not and cannot dispute that the managing member appointed in these cases is qualified, independent, and supported by the Official Creditors Committee.

Contrary to Appellant's contention that it "need not show that these harms occurred in this case," App. Br. at 13, it is well-settled that Appellant bears the burden to present "clear and convincing evidence" that a trustee is warranted in this case, not just in some hypothetical future case. See supra at 11. If any such concerns raised by Appellant do eventuate in other cases, Appellant may seek to establish "cause" under Section 1104 in those cases, and perhaps obtain the appointment of a trustee for such other debtors. Here, however, no such "cause" even plausibly exists and thus the Section 1104 Motion must be denied.

**B.    A Chapter 11 Trustee Is Not In The Best
Interests of Creditors Under Bankruptcy Code § 1104(a)(2)**

The Official Creditors Committee objected to the Section 1104 Motion.  D.E. 39.  That

objection should end the inquiry.  See In re Refco, Inc., Tr. at 121 ("the views of creditors under

Section 1104(a)(2) are almost always paramount"); see also, e.g., In re North Star Contracting

Corp., 128 B.R. at 70 (denying appointment of trustee where creditors committee supported

continued operations by current management); In re Royster Co., 145 B.R. 88, 90 (Bankr.

M.D.Fla. 1992) (denying appointment of trustee where Debtors were operating under watchful

eye of a "very active" creditor's committee and committee opposed appointment of trustee).

The Bankruptcy Court Order denying the Section 1104 Motion Section 1104 Motion

must also be rejected under Section 1104(a)(2) because it directly contravenes the stated goals

and interests of the Debtors' creditors.  Indeed, Appellant fails to even contend that the

appointment of a trustee would benefit any creditors in any tangible manner.

Moreover, the concrete risks to the creditors' interests far outweigh the theoretical

concerns raised by Appellant.  Importantly, the appointment of a trustee would bring the

Debtors' prosecution of their adversary proceedings to a grinding halt and even reverse the

Debtor's momentum, doubtless why certain adversary proceeding defendants joined the United

States Trustee in seeking appointment of a trustee in the Bankruptcy Court.  D.E. 41.  Pending

the hypothetical appointment and qualification of a trustee, the adversary proceedings will stall.

To the detriment of innocent creditors, the appointed trustee then would likely investigate and

hence re-review the Debtors' litigation strategy and the papers filed on Debtors' behalf in the

more than 125 adversary proceedings, leading to further delay and the expenditure of substantial

duplicative costs.  This cumulative delay would require the Bankruptcy Court to revisit the tight

Scheduling Order (which provides for full briefing of defendants' motion to dismiss by January

2007), undermine the leverage, momentum, and authority the Debtors and their counsel have developed to date, and ultimately risk the running of the statute of limitations on additional fraudulent conveyance claims the Debtors are still investigating – all to the material prejudice of the innocent investor creditor class.

The appointment of a trustee would also eviscerate the Debtors' exclusive right to file a plan of reorganization, a right recently extended by the Bankruptcy Court for at least six months over the objection of the United States Trustee.[8]  11 U.S.C. § 1121(c) ("**any party in interest**, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan **if and only if – (1) a trustee has been appointed** under this chapter . . .") (emphasis added).  The termination of exclusivity will unnecessarily open a two-front war – the adversary proceedings and competing plans – thereby subverting the Debtors' ability to maximize the value of these estates and equalize distributions to creditors and unnecessarily increasing the estates' administrative costs. Absent exclusivity, opportunistic parties, including those representing the interests of the adversary proceeding defendants, may instigate and pursue plans of reorganization, solicit competing plans, and hence choke the Debtors' ability to establish the full value of their various claims.[9]

---

[8]    Under the Bankruptcy Code, exclusivity may be extended for cause for up to 18 months from the Petition Date.  11 U.S.C. § 1121(d)(2)(A).

[9]    In addition, if the Section 1104 Motion is granted, the Debtors' creditors could force the vote of a trustee of their choosing, thereby further delaying this process.  11 U.S.C. § 1104(b). The Official Creditors Committee has stated that, in such event, Marwil will be its candidate in such an election.

## **CONCLUSION**

This Court should affirm the Bankruptcy Court's denial of the Section 1104 Motion for the reasons set forth herein (a) the sole basis for "cause" is a non-existent managerial deficiency which this Court remedied under non-bankruptcy law prior to the Petition Date, and (b) no dispute exists that this Court had the authority to appoint Marwil concurrently as both receiver and sole managing member of the Bayou limited liability companies.

For the foregoing reasons, Appellees respectfully request that this Court affirm the Bankruptcy Court's Order denying the Section 1104 Motion.

Dated: New York, New York
       October 6, 2006

DECHERT LLP

By: /s/ H. Jeffrey Schwartz
    H. Jeffrey Schwartz (HJS-4105)
    Gary J. Mennitt (GM-1141)
    Elise Scherr Frejka (ESF-6896)
    Jonathan D. Perry (JP-0863)
    30 Rockefeller Plaza
    New York, New York  10112
    Telephone:  (212) 698-3500
    Facsimile:  (212) 698-3599

    *Attorneys for the Debtors and Debtors-in-Possession*