UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

In re:                                          06-22306 (ASH)

BAYOU GROUP, L.L.C., et al.,

                              Debtors.
————————————————————————x

————————————————————————x

DIANA G. ADAMS,                                 06-Civ-6837 (CM)
ACTING UNITED STATES TRUSTEE,
                                                On Appeal from the
                              Appellant,        United States Bankruptcy
                                                Court for the Southern
              -against-                         District of New York

JEFF J. MARWIL, RECEIVER, and
OFFICIAL COMMITTEE OF
UNSECURED CREDITORS,

                              Appellees.
————————————————————————x

## DECISION AND ORDER
### AFFIRMING THE BANKRUPTCY COURT'S DENIAL OF THE
### UNITED STATES TRUSTEE'S MOTION TO APPOINT CHAPTER 11 TRUSTEE

McMahon, J.:

Appellant Diana G. Adams, Acting United States Trustee ("U.S. Trustee"), asks this

court to overturn an order of the United States Bankruptcy Court (Adlai S. Hardin, B.J.), dated

June 30, 2006, which denied the U.S. Trustee's motion for the appointment of a Chapter 11

trustee for Bayou Group, L.L.C. and its related entities ("Bayou" or "Bayou On-Shore Entities").

On April 28, 2006, prior to the filing in bankruptcy by any Bayou On-Shore (i.e., U.S.-based)

entity, this court appointed Jeff J. Marwil, Esq. ("Marwil") as receiver and "exclusive managing

member" of the Bayou On-Shore Entities, at the behest of a group of Bayou creditors calling themselves "The Unofficial On-Shore Creditors' Committee of the Bayou Family of Companies ("Unofficial Committee")." The relief sought by the Unofficial Committee and granted by this Court – in effect, the appointment of an equity receiver – paralleled relief sought and obtained by the creditors of certain Off-Shore Bayou entities in the Grand Court of the Cayman Islands.

On May 30, 2006, each of the Bayou On-Shore Entities filed separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. As exclusive managing member, Marwil continued to administer the Bayou On-Shore Entities, which operated as debtors-in-possession. When the U.S. Trustee learned about this arrangement, she moved for appointment of a Chapter 11 trustee to administer the estate. It is, of course, the prerogative of the U.S. Trustee (or a party in interest) to request who that bankruptcy trustee would be.

Appellant claims that, because Marwil is a receiver appointed in a pre-bankruptcy proceeding, he became a "custodian" within the meaning of § 543 of the United States Bankruptcy Code as soon as the Bayou On-Shore Entities filed their Chapter 11 petitions. Pursuant to the Code, any such "custodian" is prohibited from taking any action in respect of the debtor's property in his possession (except insofar as is necessary to preserve the property) and is required to immediately turn over all of the debtor's property in his possession to a duly appointed Chapter 11 trustee. Appellees argued that this court's order appointing Marwil as "exclusive managing partner" of the Bayou On-Shore Entities made Marwil more than simply a receiver; rather, the order provided for the ongoing corporate governance of the Bayou On-Shore Entities at a time when their prior management was disabled from acting (due to the guilty pleas of Bayou's principals). The U.S. Trustee countered that any corporate management powers

2

Marwil had been given were derivative of his receivership and disappeared the moment the entities filed in bankruptcy. The Official Creditors Committee, appointed in the Bankruptcy Court by the U.S. Trustee, adamantly opposed the U.S. Trustee's motion.

The bankruptcy court denied the U.S. Trustee's motion. Judge Hardin concluded that granting the motion would be tantamount to overturning this court's April 28 Order, something he did not have the power to do. Judge Hardin further ruled that, if he did have the power to appoint a Chapter 11 Trustee, he would decline to do so, because there was no need for any such trustee. He concluded that this court's April 28 Order had set up corporate management for each of the Bayou On-Shore Entities, which allowed them to operate as debtors-in-possession and obviated the need for a Chapter 11 trustee.

As should be obvious, this court has (quite unintentionally) set off a turf war between the Office of the United States Trustee and groups of sophisticated creditors for control over Bayou's estate in bankruptcy. The issue raised by this appeal is one of first impression and can be stated succinctly: have Bayou's creditors managed to find a loophole in the Bankruptcy Code that permits them to control the appointment of the person who will administer a bankruptcy estate?

For the reasons stated below, the bankruptcy court's denial of the United States Trustee's motion to appoint a Chapter 11 trustee for the Bayou entities is affirmed.

## I. Background

Bayou is an affiliated group of legal entities based in Connecticut that created and

3

managed private pooled investment funds, or hedge funds.[1]  Bayou's principals, Samuel Israel III and Daniel E. Marino, operated Bayou as a fraudulent Ponzi scheme and, by August 2005, Bayou collapsed under the weight of this massive fraud.  As would be expected, numerous civil and criminal investigations ensued, instigated by, among others, the United States Attorney for the Southern District of New York, the Securities and Exchange Commission ("SEC"), and the Commodity Futures Trading Commission ("CFTC").

On September 29, 2005, both Israel and Marino pled guilty to conspiracy to commit fraud, mail and wire fraud, and investment advisor fraud.  They are presently awaiting sentencing.

## A.  The District Court Order and Bayou's Bankruptcy Filing

Following Bayou's collapse, the United States obtained forfeiture orders covering all of Bayou's tangible assets, and marshaled those assets.  Bayou's only remaining assets were litigation claims.

A group of more than sixty Bayou creditors, holding more than $130 million in claims, organized themselves as the "Unofficial On-Shore Creditors' Committee of the Bayou Family of Companies" ("Unofficial Committee").  On March 27, 2006, they filed a lawsuit in this court, seeking the appointment of Jeff J. Marwil as "federal equity receiver" to pursue these litigation claims and thereby mitigate the massive losses suffered by the creditors and others.  Unofficial On-Shore Creditors' Committee v. Bayou Group, L.L.C., 06-CV-2379 (CM).  The appointment

---

[1] Bayou consists of ten separate entities: Bayou Advisors, LLC, Bayou Equities, LLC, Bayou Superfund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, and Bayou Accredited Fund, LLC – all Delaware Limited Liability Companies; Bayou Management, LLC, Bayou Securities, LLC, and Bayou Fund, LLC – all New York Limited Liability Companies; and Bayou Group, LLC – a Connecticut Limited Liability Company.

was sought pursuant to Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 thereunder, state law claims of fraud and breach of fiduciary duty, Federal Rule of Civil Procedure 66, 28 U.S.C. §§ 754 and 959, and this court's inherent authority.  (See Unofficial On-Shore Creditors' Committee's Memorandum in Support of its Motion to Appoint a Receiver, p. 15, 06-CV-2379, Docket Entry No. 6; Proposed Order Granting The Unofficial On-Shore Creditors' Committee's Motion to Appoint a Receiver, p. 1-2, 06-CV-2379, Docket Entry No. 3.)  The Unofficial Committee provided notice of this civil lawsuit to all known Bayou creditors, parties-in-interest, and the United States Department of Justice.

In filing this lawsuit, the Unofficial Committee essentially sought the same relief accorded Bayou's off-shore creditors by the Grand Court of the Cayman Islands.  On September 1, 2005, seven Bayou Off-Shore Funds[2] petitioned the Cayman Islands court to appoint liquidators to wind down the Off-Shore Funds.  (In re Bayou Off-Shore Master Fund, Ltd., et al., Nos. [2005] 397 etc. (Cayman Is. Grand Ct., Sept. 2, 2005) (Cayman Islands).)  The Grand Court appointed Gordon I. Macrae and James G. Cleaver of Kroll (Cayman) Ltd. as the Off-Shore Funds liquidators, charging them with protecting the interests of the Bayou Off-Shore Funds' creditors, investors and shareholders.  (See In re Petition of Macrae, No. 05-51154 (Bankr. D. Conn. Sept. 9, 2005), Docket Entry No. 3, Motion of Gordon I. Macrae and James G. Cleaver for Order Directing Joint Administration of Section 304 Cases, at ¶¶ 3, 6-7.)

Upon receiving the Unofficial Committee's complaint and motion for appointment of a receiver, this court consolidated their lawsuit (06-CV-2379) with In re Bayou Hedge Funds

---

[2] The Bayou Off-Shore Funds are hedge funds created by Israel and Marino in the Cayman Islands that indirectly provided funds for investment in Bayou's on-shore hedge funds.

Investment Litigation (06-MD-1775), which had just been assigned to this court by the Judicial

Panel for Multi-District Litigation.  In the consolidation order, I noted, "What the Unofficial

Committee seeks is very much akin to what occurs in a bankruptcy where there are numerous

claimants – a trustee is appointed, assets . . . are marshaled and pursued through subsidiary

litigation, professional fees are apportioned and estates are settled."  (See Appellate Record, D.E.

43, Ex. F at 3-4.)

This court initially refrained from granting the motion, stating that it was "reluctant to do

anything as drastic as appoint a Receiver until I can get some idea of what the actions being

transferred to this court for pre-trial coordination are all about, and solicit the views of those

parties and their counsel."  (Id. at 4.)

This court conducted hearings on April 18 and April 28, 2006 to consider the

appointment of Marwil as a qualified manager for each of the Bayou entities.  The United States

Attorney for the Southern District of New York sent representatives from both the Criminal and

Civil Divisions; representatives from the SEC and the CFTC were present as well.  Absolutely

no one objected to the appointment of Marwil as federal equity receiver.

During the two-day hearing, the court inquired why the Unofficial Committee (or any

three creditors) had not simply put the Bayou On-Shore Entities into bankruptcy:

> MR. KIRBY [attorney for the Unofficial Committee]: Because we believe that
> one of the things that the receiver may choose to do is file bankruptcy.  One of the
> things that he might do as one of his powers is to file bankruptcy if he believes
> that's necessary to gain additional powers in order to pursue claims.  But the
> question –
>
> THE COURT: Why didn't you go to the bankruptcy judge in the first place,
> which is what the offshore creditors did?
>
> MR. BADER [attorney for Samuel Israel]: They commenced proceedings under

Cayman Islands law.  How or why they made that choice I don't know.  But it is our view that there needs to be a fiduciary responsible to get them into the bankruptcy if bankruptcy is to happen, and what forum will be the ultimate choice is something the receiver needs to make a choice about.  But from the creditors' committee's perspective, it will be piecemeal effort to get the bankruptcy, if bankruptcy is the right choice, without a fiduciary to do that.

THE COURT: What entities are you talking about?

MR. KIRBY: . . . . Your honor, the entities – there are so many of these entities, to get each one into bankruptcy in an organized fashion you need to have someone responsible for getting them in bankruptcies.  And in the meantime, the decision by the committee was that it made the most sense to seek a fiduciary that would have the powers – and in the proposed order specifically would have the powers to continue on in that capacity as receiver through bankruptcy under paragraph – as set forth in one of its powers under Paragraph 7E of corporate governance, that he would have the powers to put them in bankruptcy if necessary.  And that way it would be an efficient process to get a voluntary bankruptcy petition into the court the receiver believes is the appropriate forum for that.  And whether that's Connecticut or New York is something the – judgment that the receiver would have to make.

(06-CV-2379, Apr. 18, 2006 Hearing Tr. at 33:7-34:20.)

In addition to Mr. Kirby's speech above, the subject of corporate governance was discussed again when counsel for the Unofficial Committee summarized the need for the receivership:

Your Honor, the committee believes that it is important to have a receiver as quickly as possible.  The reason for that is that the receiver, there presently is nobody functioning for the On-Shore entities.  We anticipate that there is likely to be a bankruptcy necessary for a number of the Bayou entities, and the choices as to what form that would take, Chapter 11 versus Chapter 7 and who would administer that bankruptcy, the creditors believe should be something that they choose.  And, given the fact that the present people who administer the Bayou On-Shore entities are Mr. Israel and Marino, as we have set forth in our papers, we believe it is important that they be replaced by a person with responsibility for all of those entities . . . .  There is still nobody to represent the Bayou entities in that process and we believe the simplest way to go forward is to have an equity receiver responsible for all the On-Shore entities, to have that person administer the bankruptcy.  The proposed order, as we have set forth, gives him those powers to do that.  If somebody feels that that's not appropriate during bankruptcy they

7

can raise those issues before a bankruptcy judge.

(06-CV-2379, Apr. 28, 2006 Hearing Tr. at 10:22-12:20.)

Immediately following the April 28 hearing, this court, without objection, entered an order appointing Marwil as "*non-bankruptcy* federal equity receiver and exclusive managing member" for each of the Bayou On-Shore Entities. (See Appellate Record, D.E. 35, Ex. A (hereinafter "Order") at ¶¶ 1, 7) (emphasis added.) As regards Bayou's corporate management, the Order decreed the following:

> *Corporate Governance*: Pursuant to 28 U.S.C. § 959(b), [Marwil shall] succeed to be the sole and exclusive managing member and representative of each of the Bayou Entities with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities, including without limitation, the authority to petition for protection under the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Code"), for any or all of the Bayou Entities and in connection therewith be and be deemed a debtor-in-possession for any or all of the Bayou Entities in proceedings under Chapter 11 of the Code, and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

(Order ¶ 7e.)

One month after his appointment as Bayou's receiver and exclusive managing member, on May 30, 2006, Marwil caused each of the Bayou entities to file with the United States Bankruptcy Court separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Marwil signed each of these petitions as "Sole Managing Member." The United States Trustee agrees that Marwil had the capacity to file these bankruptcy petitions, because the filing is considered a pre-bankruptcy act authorized by this court's Order and not prohibited by the Bankruptcy Code.

On June 13, 2006, Bayou filed a Notice of Compliance with Bankruptcy Code § 543, which stated that between Marwil's appointment as receiver on April 28 and Bayou's May 30

8

petition filing date,

> Marwil, as federal equity receiver or otherwise, did not taken [sic] possession of any property.  Nonetheless, in compliance with section 543 of the Code, on May 30, 2006 . . . Marwil, as federal equity receiver, by virtue of the Appointment Order, in fact delivered and was deemed to have delivered to the Debtors and Debtors-in-Possession any and all property held by or transferred to the Receiver, and all proceeds, product, offspring, rents, or profits of such property, that was in the Receiver's possession, custody, or control as of May 30, 2006."

(Notice of Compliance with Bankruptcy Code § 543, In re: Bayou Group, LLC, 06-22306

(Bankr. S.D.N.Y., Hardin, B.J.), Docket Entry No. 24.)  By the terms of this court's Order –

which appointed Marwil as "non-bankruptcy federal equity receiver" – Marwil ceased to have

that title and role upon filing.

On June 15, 2006, the United States Trustee appointed the Official Committee of

Unsecured Creditors (the "Official Creditors Committee"), which consists of five members –

four of whom were voting members of the Unofficial Committee.

**B.  *The United States Trustee's Motion to Appoint a Chapter 11 Trustee***

On June 20, 2006, the U.S. Trustee moved the bankruptcy court to appoint a Chapter 11

trustee, arguing that "cause" was sufficiently present to warrant such appointment.  11 U.S.C.

§ 1104(a)(1)-(2) permits a bankruptcy court to appoint a trustee "for cause, including fraud,

dishonesty, incompetence, or gross mismanagement of the affairs of the debtor  . . . [or] if such

appointment is in the interests of creditors, any equity security holders, and other interests of the

estate."  Cause existed, the U.S. Trustee argued, because Marwil qualified as a "custodian" under

the Bankruptcy Code, and he therefore must "deliver to the [bankruptcy] trustee any property of

the debtor held by or transferred to such custodian . . . on the date that such custodian acquires

knowledge of the commencement of the [bankruptcy proceeding]."  Id. at § 543(b).  According

to the U.S. Trustee, Marwil is a "custodian" because this court's Order appointed Marwil "receiver" of the Bayou entities.  The Bankruptcy Code defines "custodian" as a "receiver . . . of any property of the debtor, appointed in a case or proceeding not under this title."  Id. at § 101(11).  Because  Bayou's former corporate management had pled guilty to federal crimes, turning over the property to the former management was inconceivable.  Appointment of a Chapter 11 trustee was thus necessary to fill the vacuum of lawful management.

This § 1104 motion was opposed by the Official Creditors Committee and Bayou, who maintained that Marwil was Bayou's management under this court's Order.  (See Appellate Record, D.E. 35, 39 and 44.)  Eric and Diane Garfinkel – original investors who got all their money out of Bayou before the firm collapsed, and who are presently defendants in an adversary proceeding commenced by Marwil on behalf of the Bayou entities – were the only parties to file a statement in support of the U.S. Trustee's § 1104 motion.  (See Appellate Record, D.E. 41.)

At the close of oral argument, Judge Hardin denied the U.S. Trustee's motion for two reasons.

First, Judge Hardin ruled that he did "not have the power to enter an order which would completely change and undermine the order entered by Judge McMahon."  (Appellate Record, D.E. 49 ("Motion Oral Arg. Tr.") at 24:1-3.)  On this conclusion of law, Judge Hardin suggested that the U.S. Trustee "either appeal and get it before the District Court that way [or] move before Judge McMahon for the relief you seek here, you can move to withdraw the reference . . . but this isn't the court to enter an order that completely and totally undermines what Judge McMahon did."  (Id. at 15:23-16:3.)

Alternatively, Judge Hardin ruled that, even if he did have the power to appoint a Chapter

11 trustee, "I wouldn't do it because I view Judge McMahon's order as not simply appointing a custodian or a receiver, but as appointing the new management of these debtors, management . . . which is expressly enjoined [sic] by Judge McMahon to act as manager of debtor-in-possession with regard to each of these entities." (Id. at 24:3-9.) On this point, Judge Hardin found that this court unambiguously appointed Marwil to be Bayou's corporate governor, not merely to be its receiver:

> Mr. Marwil is called a receiver, but Judge McMahon's order goes well beyond that . . . . This is not a custodian. Mr. Marwil is not simply a custodian. He is not a custodian any more than had the District Court approved the appointment of a new board of directors, a new president, somebody with a title other than receiver   . . . . He is given the management of these entities. He is the new board of directors, the new president, CEO, whatever title you want. That's the nature of his responsibilities . . . . [I]t is crystal clear that the purpose of Judge McMahon's order was to appoint somebody who was in fact and law the equivalent of a new board of directors, new CEO, new president, new CFO as a debtor-in-possession    . . . . [I]t is perfectly clear to me that he's really not just a receiver or a custodian    . . . .

(Id. at 6:18-11:14.) In so concluding, Judge Hardin rejected the U.S. Trustee's argument that Marwil's corporate powers were simply derivative of his receivership.

Judge Hardin officially denied the U.S. Trustee's motion by order signed June 30, 2006. (See Appellate Record, D.E. 49.)

The U.S. Trustee filed a timely notice of appeal of Judge Hardin's order, but did not seek acceleration of the appeal. This court heard oral argument on November 17, 2006.

## II.  Standard of Review

This court reviews the bankruptcy court's conclusions of law *de novo*, and its findings of fact for clear error. In re Stoltz, 315 F.3d 80, 87 (2d Cir. 2002); Fed R. Bankr. P. 8013.

### III.  <u>Discussion</u>

In deciding the U.S. Trustee's motion, Judge Hardin ruled that he neither could nor (if he could) would appoint a Chapter 11 trustee, because this court had already appointed Jeff Marwil as corporate management for each of the Bayou On-Shore Entities.

Whether Judge Hardin erred in denying the U.S. Trustee's motion depends primarily (but not entirely) on whether this court had the power to appoint Marwil as Bayou's "exclusive managing member" and to vest him with corporate management powers.  Notably, the parties do not appear to disagree on this point.  Both parties believe this court did possess such power. Similarly, both parties agree that Marwil's role as receiver terminated upon the filing of the bankruptcy petition, pursuant to § 543 of the Bankruptcy Code.  (<u>See</u> Appellant Reply Br. at 2; Appellee Br. at 13.)[3]

Where the parties diverge is whether Marwil's role as corporate governor was derived solely from his receivership appointment.  Appellant's primary contention on appeal is that termination of his receivership also ended Marwil's role as managing member of the Bayou entities, because such role "was wholly derivative of his appointment . . . as receiver."  (06-CV-6837, Nov. 17, 2006 Oral Arg. Tr. 10:9-11; <u>see also</u> Appellant Reply Br. at 2.)  Appellant argues that "the Court's order created two hats, and [Marwil] took one hat off and left one hat on.  But those two hats were attached . . . .  The managing member hat is not one that can be left separate from the receiver hat.  His status as a managing member was completely derived from his status as a receiver."  (06-CV-6837, Nov. 17, 2006 Oral Arg. Tr. 12:6-12.)

---

[3] As noted above, Marwil's role as receiver also terminated by the express terms of this court's Order.

This court disagrees.  In granting the Unofficial Committee's motion to appoint Marwil as Bayou's "federal equity receiver" and "exclusive managing member," this court found "that entry of this Order . . . is warranted under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 thereunder, state law claims of fraud and breach of fiduciary duty, Federal Rule of Civil Procedure 66, and the facts and circumstances of this case."  (Order at p. 1, 5.)  I therefore signed the Order "Pursuant to 28 U.S.C. §§ 754 and 959, Federal Rule of Civil Procedure 66, and this court's inherent authority."  (Id. at p. 2.)  Thus, this court's Order clearly contemplated appointing Marwil as both a receiver and as Bayou's corporate management.  The corporate governance appointment was not made pursuant to federal receivership statutes *only*, but pursuant to federal securities laws and this court's inherent authority as well.  Thus, his corporate management appointment was not merely derivative of his receivership appointment, and his corporate management role did not cease when he caused the Bayou entities to file for bankruptcy.

### A.  Marwil's Corporate Governance Powers are Derived From Both His Appointment as Receiver and his Separate Appointment as Corporate Manager Pursuant to This Court's Equitable Powers

The U.S. Trustee concedes that this court could appoint Marwil as Bayou's corporate governor, but argues that this appointment was derived solely from his status as a non-bankruptcy receiver.  To be sure, this court *could have* appointed Marwil corporate management pursuant to federal receivership statutes alone.  See 28 U.S.C. § 959(b) ("a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor-in-possession, *shall manage and operate the property in his possession* . . . according to the requirements of the valid laws of the State in which such property is situated") (emphasis

13

added); see also Fed. R. Civ. Proc. 66; 28 U.S.C. § 754. Federal courts may grant a receiver

powers that include the day-to-day management of the business entity, including the authority to

liquidate assets, the authority to pursue claims, and the authority to file for bankruptcy. See, e.g.,

S.E.C. v. Credit Bancorp, Ltd., 297 F.3d 127, 130 (2d Cir. 2002) (recognizing lower court's

appointment of receiver "who was granted broad powers to, *inter alia*, issue subpoenas, marshal

[corporate] assets, liquidate those assets, and reinvest the proceeds in Treasury instruments.");

Consol. Rail Corp. v. Fore River Ry. Co., 861 F.2d 322, 326 (1st Cir. 1988) ("A receiver was

appointed . . . to take control and management of [the corporate] property to ensure the

preservation of the assets pending final disposition of this suit."); In re Manhattan Inv. Fund,

Ltd., 310 B.R. 500, 503 (Bankr. S.D.N.Y. 2002) (recognizing receiver's capacity to file Chapter

11 bankruptcy petition); see also 19 C.J.S. Corporations § 779 (2006) ("An order directing the

receiver to take control of all the property of the company and to assume entire management of

its affairs has the practical effect of an injunction against the continuance of the duties of the

officers of the corporation.").

Had I appointed him solely pursuant to these receivership statutes, then the U.S. Trustee

would be correct that his corporate management powers ceased the moment he caused Bayou to

file for bankruptcy. See 11 U.S.C. § 543.

But that is not what this court did. This court also appointed Marwil to act as Bayou's

corporate management pursuant to federal securities laws and the court's inherent authority.[4]  It

---

[4] Although the Order states that Marwil was appointed Bayou's corporate governor "Pursuant to 28 U.S.C. § 959(b)," that alone does not illuminate the question of whether his corporate management powers are derived from his receivership, because § 959(b) applies to "trustee[s], *receiver[s] or manager[s]* appointed in any cause pending in any court of the United States."  (Emphasis added.)

is well settled that "Section 22(a) of the 1933 Act, 15 U.S.C. § 77v(a) (1970), and Section 27 of

the 1934 Act, 15 U.S.C. § 78aa (1970), confer general equity powers upon the district courts,"

that would permit his appointment.  S.E.C. v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1103

(2d Cir. 1972); see also S.E.C. v. Am. Bd. of Trade, Inc., 830 F.2d 431, 436 (2d Cir. 1987).

"Once the equity jurisdiction of the district court has been properly invoked by a showing of a

securities law violation, the court possesses the necessary power to fashion an appropriate

remedy."  Manor Nursing Ctrs., Inc., 458 F.2d at 1103.

Federal courts invoking these equity powers have fashioned various types of remedies,

including the appointment of receivers, see, e.g., Am. Bd. of Trade, Inc., 830 F.2d at 436,

trustees, see, e.g., Manor Nursing Ctrs., Inc., 458 F.2d at 1103, and interim boards of directors,

see, e.g., Malhas v. Shinn, 597 F.2d 28, 29 (2d Cir. 1979) (noting corporation was "governed by

an interim board of directors appointed by the court below at the instance of the S.E.C.  The

S.E.C. had sought and obtained the discharge of the old board and the appointment of an interim

one because of numerous securities law violations by [the corporation] and certain

corporate-allied individuals.")

The Bayou principals – Messrs. Israel and Marino – have admitted to operating a

fraudulent scheme in violation of federal securities law.  From 1998 through Bayou's 2005

collapse, Israel and Marino intentionally misrepresented the value of the various Bayou entities

in order to attract new investors, lull existing investors into increasing their investments, and pay

themselves fraudulent performance fees.  (See Appellate Record, D.E. 41, Ex. A ("Israel

Allocution") at 15:14-17:16, 24:10-24; Ex. B ("Marino Allocution") at 17:9-19:15, 27:19-28:16.)

Israel and Marino's fraud included, *inter alia*, the creation of a fictitious accounting firm,

distribution of numerous false financial statements, including "audits" performed by the sham accounting firm, and a plethora of other written and verbal misrepresentations made to Bayou investors.  (See id.)  They could hardly be trusted with the ongoing management of the entities they had looted.  And, indeed, they were not managing those entities, to the grave detriment of those who had invested in them.

Because the Bayou principals have confessed to violations of federal securities laws, this court was acting within its equitable powers when it appointed Marwil "managing member" of the Bayou entities.  See Malhas, 597 F.2d at 29.  These federal security law violations form an independent basis – separate and apart from federal receivership statutes – for this court to make such an appointment.

Moreover, when the Unofficial Committee sought the appointment of Marwil as receiver and corporate manager for the Bayou entities, the Committee invoked this court's equity jurisdiction.  As discussed above, federal courts possess broad equitable powers under federal securities and receivership laws to fashion appropriate remedies, including the appointment of corporate management.  Malhas, 597 F.2d at 29; see also U.S. v. ILA Local 1588, 77 Fed. Appx. 542, 544-45 (2d Cir. 2003) (affirming district court's appointment of an administrator to manage a union, pursuant to the court's "inherent equitable authority").

Thus, the U.S. Trustee's attempt to lump the corporate governance appointment together with the receivership – and disposing of both pursuant to § 543 – would be inappropriate here, because all parties recognized that this court did not appoint Marwil, "receiver qua receiver." (06-CV-6837, Nov. 17, 2006 Oral Arg. Tr. 31:13.)  Unlike a typical receiver, who takes possession of property whose ownership is disputed or that is subject to multiple claims, the

Bayou receiver could not take possession of the Bayou entities' assets, because the assets had been largely forfeited during the Marino/Israel criminal proceedings. True, this court certainly understood that Marwil would marshal Bayou's remaining assets (primarily choses in action), as a prototypical receiver would. But this court also saw fit to appoint Marwil to be Bayou's managing member because Bayou's then-current management was obviously more concerned with their ongoing criminal proceedings than with managing the company. The resulting Order thus sought to remedy several Bayou ills; while the 'receivership qua receivership' ends with the filing of the bankruptcy petition, the corporate governance appointment survives. To find otherwise would merely frustrate the equitable power of this court to fashion what it deemed an appropriate remedy.

I also note that had the Unofficial Committee asked this court to appoint Marwil corporate manager of the Bayou entities pursuant to the laws of the various entities' states of incorporation – Delaware, New York and Connecticut – I could have done so. Corporate governance issues are generally determined by the laws of the state in which the entity is incorporated, see Estate of Pew v. Cardarelli, No. 05-CV-1317, 2006 WL 3524488, at *6 n.10 (N.D.N.Y. Dec. 6, 2006), and all three states would permit such appointment. See Feldman v. Pennroad Corp., 60 F. Supp. 716, 719 (D. Del. 1945) (noting in federal application for appointment of receiver for Delaware corporation that "proof of fraudulent and reckless mismanagement of the corporate business by its board of directors such as would convince the Court that further control of the corporation by the same board would result in the destruction of its business or cause unwarranted loss to the stockholders will call into exercise the discretionary power of the Court to appoint a receiver" to manage the corporation); Varsames v. Palazzolo, 96

F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (denying plaintiffs' motion for appointment of receiver but granting plaintiffs' request for order transferring to plaintiffs possession of "stock and, therefore, the right to manage and control [the corporation]"); <u>Morrow v. Prestonwold, Inc.</u>, No. CV-445844S, 2002 WL 652369, at *6 (Conn. Super. Ct. Mar. 22, 2002) (appointing custodian of corporation and ordering that "custodian shall exercise all the powers of the board of directors and officers of [subject corporation] to the extent necessary to manage the affairs of the corporation in the best interests of its stockholders.").

Although the Unofficial Committee inserted "state law" into its Memorandum of Law and Proposed Order as a separate basis for Marwil's receivership appointment, the Committee neither briefed the state law issues nor argued them during the two-day hearing. The insertion seemed more boilerplate and, accordingly, I did not appoint Marwil pursuant to state law.

### B.  The April 28 Order's "Debtor-in-Possession" Clause is Mere Surplusage

During oral argument, appellant conceded that they had "no problem with this court having entered an order that empowers a receiver to file a chapter proceeding on behalf of the entities." (06-CV-6837, Nov. 17, 2006 Oral Arg. Tr. 43:17-19.)  That statement led to the following exchange:

> THE COURT:  Your problem is the subsequent language about acting as a debtor-in-possession.
>
> MR. THEUS:  That's absolutely the problem.

<u>Id</u>. at 44:2-5.  That is, appellant essentially objects *not* to this court's appointment of Marwil as Bayou's corporate governor, but the Order's explicit statement that the Bayou entities, through Marwil, could be debtors-in-possession if they filed for Chapter 11 bankruptcy.  From appellant's viewpoint, the Order is problematic because it grants Marwil the power to "be and be

18

deemed a debtor-in-possession for any or all of the Bayou Entities in proceedings under Chapter 11 of the [Bankruptcy] Code." (Order ¶ 7e.)  In doing so, appellant argues, the Order impermissibly invades the U.S. Trustee's turf, undermining the Trustee's ability to seek the appointment of a Chapter 11 trustee under 11 U.S.C. § 1104.

I agree that, if I could turn back the clock, I would not have included any reference to "debtor-in-possession" in the Order.  Deciding whether Marwil qualified as a debtor-in-possession under the Bankruptcy Code was quintessentially the province of a bankruptcy judge. It was not this court's intention to predetermine that issue.

However, because Marwil is now Bayou's management, the language to which the U.S. Trustee objects is mere surplusage.  This court undoubtedly had the power to appoint Marwil as Bayou's "exclusive managing member" and to direct him to "succeed to be the sole and exclusive managing member and representative of each of the Bayou Entities with the sole and exclusive power and authority to *manage and direct the business* and financial affairs of the Bayou Entities, including without limitation, the authority to petition for protection under the Bankruptcy Code." (Order ¶ 7e.)  The management of a bankrupt entity that files in Chapter 11 is automatically authorized to act as the debtor-in-possession, since under the Bankruptcy Code, the term "debtor-in-possession" quite simply "means debtor." 11 U.S.C. § 1101(1); see also Black's Law Dictionary 412 (7th ed. 1999) (defining debtor-in-possession as, "A Chapter 11 or 12 debtor that *continues to operate its business* as a fiduciary to the bankruptcy estate.") (emphasis added).

Thus, as long as the April 28 Order placing Marwil in the position of managing the Bayou On-Shore Entities is valid – and even the U.S. Trustee concedes that it is – Marwil has

been authorized to continue managing the affairs of the debtors after they filed in bankruptcy.
When Marwil caused the Bayou entities to file for Chapter 11 bankruptcy one month after his
appointment, Marwil's status as corporate governor automatically blossomed into that of debtor-
in-possession since, as managing member of Bayou, Marwil was the debtor's management. No
judicial decree was necessary to accomplish this result. Thus, the reference in the Order about
his acting as debtor-in-possession did nothing except authorize him to exercise powers he
already had the statutory ability to exercise.

The Bankruptcy Code prefers debtors to be managed by debtors-in-possession rather than
bankruptcy trustees. As the Bankruptcy Court observed in In re Adelphia Communications
Corp., 336 B.R. 610, 655 (Bankr. S.D.N.Y. 2006), "Chapter 11 of the Code is designed to allow
the debtor-in-possession to retain management and control of the debtor's business operations
unless a party in interest can prove that the appointment of a trustee is warranted, and there is a
strong presumption that the debtor should be permitted to remain in possession absent a showing
of need for the appointment of a trustee." (internal quotations and citations omitted).

### C. The United States Trustee's Remaining Arguments Do Not Detract from Marwil's Status as a Viable Managing Member and Debtor-In-Possession

Having established that this court possessed the power to appoint Marwil as Bayou's
corporate governor – and that such appointment was separate and apart from Marwil's
appointment as a traditional 'receiver' – this court finds appellant's remaining arguments
unavailing.

Appellant urges this court to appoint a bankruptcy trustee because Marwil is a
"custodian" under the Bankruptcy Code and he therefore must "deliver to the [bankruptcy]
trustee any property of the debtor held by or transferred to such custodian . . . on the date that

such custodian acquires knowledge of the commencement of the [bankruptcy proceeding]." 11

U.S.C. § 543(b). According to appellant, Marwil is a "custodian" because this court's Order

only appointed Marwil as receiver of the Bayou entities and the Bankruptcy Code defines

"custodian" as a "receiver . . . of any property of the debtor, appointed in a case or proceeding

not under this title." Id. at § 101(11).

    As previously discussed, this court appointed Marwil as a receiver *and* as the exclusive

managing member of Bayou; his corporate governance powers are not derived from his

receivership. Therefore, upon causing Bayou to file its bankruptcy petition, Marwil's

receivership ended and he immediately became the managing member of a debtor-in-possession.

As such, he is under no obligation to turn over Bayou's property to a bankruptcy trustee.

Appellant cites no authority to the contrary. As Judge Hardin correctly stated, "We're not

dealing with a custodian or a receiver. Section 543 has no application." (Motion Oral Arg. Tr.

9:19-20.)

    Appellant also argues that the Bankruptcy Code imposes stringent obligations on Chapter

11 trustees to protect creditors, and that Marwil – who appellant claims is bound only by the

court's Order – is not subject to these same rigorous requirements. Appellant compares the

various duties imposed on trustees by the Bankruptcy Code, with the duties imposed on Marwil

by the Order, and argues the latter are insufficient and inconsistent with the Bankruptcy Code.

(See Appellant Br. at 15-16.)

    This argument fails twice over. First, this court clearly never intended for its Order to

delineate all of Marwil's duties as a debtor-in-possession under the Bankruptcy Code. As Bayou

had not even filed for bankruptcy at the time the Order was signed, such detail would have been

speculative and perhaps unnecessary. To the extent that the Order offers guidelines for Marwil's exercise of his managerial powers (whether in or out of bankruptcy), these guidelines are not inconsistent with – nor do they seek to supplant – the Bankruptcy Code. Compare, e.g., Order ¶ 7(h) with 11 U.S.C. §§ 1107(a), 1106(a)(5).

More important, appellant's argument suggests that Marwil is operating in some bankruptcy netherworld, bound neither by trustee nor debtor-in-possession requirements, and subject only to the obligations listed in this court's Order. Of course, this is not true. Marwil is the exclusive managing member of a debtor-in-possession and is subject to all of the obligations imposed on such entities by the Bankruptcy Code, see, e.g., 11 U.S.C. §§ 345, 1107(a), 1106(a)(5), 1121(c)(1), as administered by a respected bankruptcy judge.

Last, it bears noting that no authority exists that interprets the various federal and state laws discussed above to suggest that the imminent potential for filing a bankruptcy petition in any way mitigates this court's power to appoint a corporate governor. On the contrary, as the appointment of corporate governance typically occurs during a corporation's most troubled hour, the specter of bankruptcy is often present and, accordingly, courts that vest receivers or custodians with corporate governance powers may also explicitly vest the individual with the power to file a bankruptcy petition on behalf of the corporation. See, e.g., In re Manhattan Inv. Fund, Ltd., 310 B.R. at 503.

## D.  The Bankruptcy Code Loophole

This result exposes a loophole in the Bankruptcy Code.

The 1978 Bankruptcy Reform Act expressly sought to supplant federal equity receivers from bankruptcy proceedings with the United States Trustee. According to the Act's legislative

history, federal equity receivers played a substantial role to deleterious effect under the former

regime. Under the Bankruptcy Act of 1898, "Those who dominated the affairs of the corporation

arranged for the filing of the creditors' bill" which, *inter alia*, petitioned bankruptcy courts to

appoint receivers to act on behalf of the petitioning creditor and all others similarly situated.

H.R. Rep. No. 95-595, at 243 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6202. These

receivers were appointed to "protect the property from misappropriation, waste, and the

disintegration which might follow attachment and levy by numerous individual creditors." Id.

The bankruptcy court "usually agreed to the appointment of the receiver suggested by the

parties." Id. The immediate effect of this practice on the U.S. bankruptcy system

> was to negate the possibility that any of the assets of the debtor might be
> subjected to the enforcement of creditors' rights in any suit except the one
> initiated nominally by the creditor but in reality by the corporation itself. It was
> quite patent that this procedure was merely an indirect means by which those in
> control of a corporation, having determined upon reorganization, propelled it into
> receivership. Primarily it was a way of ensuring that complete control of the
> proceedings would thereafter reside in the management of the debtor corporation
> . . . . (The equity receivership) was a technique which gave complete control of a
> reorganization with little or no judicial check, to those who had resort to it,
> managed its initiation, and guided its subsequent stages. The not infrequent,
> although not invariable, result, where these persons had conflicting motives and
> interests, was to make this procedure an instrument of personal benefit to them,
> and by that token an instrument of detriment to creditors and stockholders.

Id. at 243-44.

Although these types of equity receiverships were eliminated by the 1933 and 1934

amendments to the 1898 Bankruptcy Act, the role of federal equity receivers in bankruptcy

proceedings continued to cause problems. In its report discussing the 1978 Bankruptcy Reform

Act, the House of Representatives cited the first major study of bankruptcy administration in the

United States, a 1929 report prepared by William J. Donovan:

> Bankruptcy is administered by over 140 district judges, over 530 referees . . . and an army of shifting and changing individuals consisting of some 50,000 trustees . . . together with a multitude of receivers . . . and others.  These groups exist supposedly to aid the creditors, of whom there are at least several millions a year.  They fail in that purpose because responsibility is divided.  The judges have neither the time, the facilities, nor the training to exercise the administrative duties which have been thrust on them.  They must rely greatly upon the referees . . . . The referees in turn look to the receivers and trustees, whose actions they can watch only to a limited extent.  The receivers think they owe nothing to the creditors since their appointments come from the judges or referees . . . . Receivers and trustees, besides being inexperienced and engaged in other occupations, are underpaid and rely upon their attorneys to do the work.

Id. at 98.

Thus, when Congress enacted the Bankruptcy Reform Act of 1978, it "sought to separate the administrative duties in bankruptcy from the judicial tasks, leaving the bankruptcy judges free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination."  H.R. Rep. No. 99-764, at 18 (1986), as reprinted in 1986 U.S.C.C.A.N. 5227, 5230.  Accordingly, the 1978 Bankruptcy Reform Act expressly prohibited bankruptcy judges "a court from appointing a federal equity receiver in a bankruptcy case.  11 U.S.C. § 105(b).  In enacting § 105(b), the Senate report noted

> The Bankruptcy Judge is prohibited.  The Bankruptcy Code has ample provision for the appointment of a trustee when needed.  Appointment of a receiver would simply circumvent the established procedures.

S. Rep. No. 95-989, at 29 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5815.  The 1978 Bankruptcy Act purged federal equity receivers from bankruptcy proceedings entirely, and established the position of U.S. Trustee to pick up some of the administrative slack.  See H.R. Rep. No. 95-595, at 100-02 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6061-63 ("In order to solve the problems and to make the bankruptcy system operate more efficiently and fairly, the bill proposes . . . a role for a government official to supervise bankruptcy administration . . . .

The concept of the United States Trustee system is to provide decentralized, semi-autonomous officials to administer the bankruptcy laws.")

Given this legislative history, it is evident that the result in this decision contradicts the spirit – albeit not the letter – of the 1978 Bankruptcy Reform Act.  The Unofficial Committee essentially found a way to appoint their own bankruptcy "trustee," by having a district judge do it prior to any filing in bankruptcy.  However, nothing in the Code – as it is presently drafted – precluded them from moving this court to appoint corporate governance for the Bayou entities, pre-petition.  Even in the instant case – where the estate's principals are criminals, so it is obvious pre-petition that the conditions for appointing a bankruptcy trustee will eventually be met – nothing in the Code precludes a federal district judge from appointing corporate management, prior to the filing of any petition in bankruptcy.  And nothing in the Code deprives a corporate manager thus appointed from continuing as manager after the bankruptcy filing.

While the Code does not prohibit such practices, the U.S. Trustee can take some solace in the fact that this chain of events will rarely occur.  The necessary ingredients – corrupt management, inevitable bankruptcy, and a highly motivated group of creditors desirous of a particular individual to manage a troubled estate– will not often appear ensemble.

But as this case demonstrates, it can happen.  If this is deemed inappropriate, the remedy lies with Congress.

## IV.  Conclusion

For the foregoing reasons, the court affirms the bankruptcy court's denial of the United

## IV.  **Conclusion**

For the foregoing reasons, the court affirms the bankruptcy court's denial of the United

States Trustee's motion to appoint a Chapter 11 trustee.


This constitutes the decision and order of the court.

Dated: February 2, 2007

_____
U.S.D.J.

BY FAX TO ALL COUNSEL